## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

Jason M. Potter  1053284 )
(full name)           (Register No). )
_____ )
_____ ) 19 - 0084 - CV - W - FJG - P
                          )  Case No._____
          Plaintiff(s).   )
                          )
v.                        )
                          )
                          )
Jeff Weber, et al.        )  Defendants are sued in their (check one):
(Full name)               )  ____ Individual Capacity
_____ )  ____ Official Capacity
_____ )   X   Both
          Defendant(s).

## COMPLAINT UNDER THE CIVIL RIGHTS ACT OF 42 U.S.C. § 1983

I.    Place of present confinement of plaintiff(s): W. R. D. C. C.
      3401 Faraon Street, St. Joseph, MO. 64506

II.   Parties to this civil action:
      Please give your commitment name and any another name(s) you have used while
      incarcerated.

      A. Plaintiff  Jason M. Potter   Register No. 1053284
         Address  WRDCC., 3401 Faraon Street
                   St. Joseph, MO. 64506

      B. Defendant  Jeff Weber, et al.

      Is employed as  Sheriff of Cass County

      For additional plaintiffs or defendants, provide above information in same format on a
separate page.

1

III.   Do your claims involve medical treatment?        Yes _X_    No _____

IV.    Do you request a jury trial?                      Yes _X_    No _____

V.     Do you request money damages?                     Yes _X_    No _____

       State the amount claimed?                  $ _990_ / _000_ (actual/punitive)

VI.    Are the wrongs alleged in your complaint continuing to occur?   Yes _X_ No ___

VII.   Grievance procedures:

       A. Does your institution have an administrative or grievance procedure?

                                              Yes _X_    No _____

       B.  Have the claims in this case been presented through an administrative or grievance
       procedure within the institution?      Yes _X_    No _____

       C.  If a grievance was filed, state the date your claims were presented, how they were
       presented, and the result of that procedure. (Attach a copy of the final result.)
       _Attached are paragraphs 170-187_
       _Attached are Exhibits B, Q, BB, II, JJ, KK, LL, mm NN_
       _See Exhibit BB paragraphs 9-11_

       D.  If you have not filed a grievance, state the reasons.
       _____
       _____
       _____

VIII.  Previous civil actions:

       A. Have you begun other cases in state or federal courts dealing with the same facts involved
       in this case?                          Yes _X_    No _____

       B.  Have you begun other cases in state or federal courts relating to the conditions of or
       treatment while incarcerated?          Yes _____    No _X_

       C.  If your answer is "Yes," to either of the above questions, provide the following
       information for each case.

             (1) Style: _____
                        (Plaintiff)              (Defendant)
             (2) Date filed: _____

(3) Court where filed: _Cass County Circuit Court_

(4) Case Number and citation: _18CA-CC00145_

(5) Basic claim made: _Form 40_

(6) Date of disposition: _____

(7) Disposition: _Pending_

(Pending) (on appeal) (resolved)

(8) If resolved, state whether for:_____

(Plaintiff or Defendant)

For additional cases, provide the above information in the same format on a separate page.

IX.    Statement of claim:

A.    State here as briefly as possible the facts of your claim. Describe how each named defendant is involved. Include the names of other persons involved, dates and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

_Attached are paragraphs 14-169_

_Attached are Exhibits A-Z_

_Attached are Exhibits AA-OO_

B.    State briefly your legal theory or cite appropriate authority:

_Attached are paragraphs 188-231_

3

X.    Relief: State briefly exactly what you want the court to do for you. Make no legal arguments.

Attached are paragraphs 232-247

XI.   Counsel:

A. If someone other than a lawyer is assisting you in preparing this case, state the person's name. Nobody  N/A

B. Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action?    Yes X No

If your answer is "Yes," state the names(s) and address(es) of each lawyer contacted.

Gillian Wilcox          Jessie Steffan
3601 Main Street        906 Olive  Suit 1130
KCMO   64111            St. Louis mo. 63101

C. Have you previously had a lawyer representing you in a civil action in this court?
                                          Yes _____   No X

If your answer is "Yes," state the name and address of the lawyer.

_____

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed (signed) this 25th day of January 2019.

Signature(s) of Plaintiff(s)  WRDCC
                              3401 Farson Street
                              St. Joseph, mo. 64506

Irene Elaine Ueligger
Notary

IRENE ELAINE UELIGGER
Notary Public, Notary Seal
State of Missouri
Buchanan County
Commission # 17907675
My Commission Expires 01-31-2021

4

# Preliminary Statement

This is a civil rights action filed by Jason M. Potter who was a pretrial detainee for approximately 816 days in the Cass County Jail located in Harrisonville, Missouri, for damages and injunctive relief under 42 USC 1983 alleging use of excessive force in violation of the Fourth Amendment to the United States Constitution. The Plaintiff alleges violations of Due Process under the Fifth and Fourteenth Amendments to the U.S. Constitution by illegally deducting money from pretrial detainees accounts before a plea of guilt or finding of guilt and then the court order to be able to take that money violating R.S.M.O. 221.070 and RSMO 221.120 and amounting to wrongful appropriation of money, mismanagement for non compliance with federal, state, and local laws. Plaintiff further alleges right of access to the court

court ordered Pro se Indigent supplies
failure to fund and accord an
adequate law library, preventing
Plaintiff Potter from proceeding pro se
in violation of Plaintiffs rights under
the First, Fifth, Sixth, and Fourteenth
Amendments to the U.S. Constitution.
Plaintiff alleges that jail officials
deny pretrial detainees legal calls
while there under investigation of
a crime and fail to provide pretrial
detainees a private room to make
private unmonitored legal calls, the
public defenders office telephones
are blocked from inmates calling them,
this prevents pretrial detainees
from trying to get an attorney
when there under investigation
of a crime or charged with a crime
violating Missouri Revised Statutes
544.170 and 600.048 and the
right to counsel under the Sixth
Amendment to the United States
Constitution. This also breaks
rules of the attorney-client privilege
issues with talking in public setting.
Plaintiff Potter and numerous
pretrial detainees who have been

time are denied outdoor exercise in fresh air, no access to an indoor gym, denied outdoor recreation, there is no adequate space for exercise, no sunlight, the windows are painted over, No TV, No Newspaper, or outside source of news, pretrial detainees are locked down 18-23 hours a day, jail conditions add up to create an overall effect that is unconstitutional and unhealthy to Plaintiffs physical and mental health, further these jail conditions amount to punishment for pretrial detainees who have not been found guilty, these jail conditions often effect guilty pleas that are coerced, pretrial detainees are often forced to plea guilty to get out of these jail conditions in violation of Plaintiffs due process under the Fifth and Fourteenth Amendments to the U.S. Constitution. Plaintiff further alleges the jail administration illegally put a hold on Plaintiffs mail without providing any due process and notifications.

deprivation of personal property such as law books, legal material, hygienic items, etc., without following proper procedures or any due process hearings. Plaintiff alleges violations of the Equal Protection Clause under the Fourteenth Amendment to the U.S. Constitution. Plaintiff experienced many forms of retaliation by the defendants. Lastly but not limited to, on top of all the overly restrictive conditions the defendants tried all forms of ways to block the preparation and filing of this Civil Rights Complaint all in an attempt to stop the public and courts from learning about prisoner issues and complaints.

# JURISDICTION AND VENUE

1. This is a civil action authorized by
   42 USC Section 1983 to redress the
   deprivation, under color of state law,
   of rights secured by the Constitution
   of the United States. The court has
   jurisdiction under 28 USC Section 1331
   and 1343 (a)(3). The court has
   supplemental jurisdiction over
   plaintiff's state law claims under
   28 U.S.C. Section 1367. Plaintiff
   Jason M. Potter seeks declartory
   relief pursuant to 28 USC Section 2201
   and 2202. Plaintiff Potters claims
   for injunctive relief are authorized
   by 28 U.S.C. Section 2283 and 2284
   and Rule 65 of the Federal Rules of
   Civil Procedure.

2. The Western District of Missouri is
   an appropriate venue under
   28 USC Section 1391 (b)(2) because
   it is where the events giving rise
   to this claim occured

## PLAINTIFF

3.     Plaintiff Jason M. Potter was at all times mentioned herein a inmate pretrial detainee of the Cass County Jail or under arrest and control by a officer of the Cass County Sheriffs Office located at 2501 West Mechanic St., Harrisonville, Mo. 64701. He is now confined in custody of the Missouri Department of Corrections located at Western Reception Diagnostics And Correctional Center 3401 Faraon Street, St. Joseph, Missouri, 64506

4(a).    Defendant Jeff Weber is the Sheriff of Cass County. He is legally responsible for the operation of the Cass County Sheriffs Office and Cass County jail, located at 2501 West Mechanic Street, Harrisonville, Mo. 64701. He is legally responsible for the welfare of all the inmates of that jail.

4(b)    Defendant Dwight Diehl was the sheriff of Cass County. He was legally responsible for the operation of the Cass County Sheriffs Office and Cass County jail located in Harrisonville Missouri. He was legally responsible for the welfare of all the inmates of that jail during the years 2015 and 2016 mentioned in this complaint.

5(a)    Defendant K. Nevilles badge number 627 is the jail lieutenant and Division Commander of the Cass County jail. He is legally responsible for

the operation and administration of the Cass County Jail located in Harrisonville Missouri. He is legally responsible for the welfare of the inmates of that jail. At all times mentioned in this complaint, he held the rank as Lieutenant Division Commander and was assigned to the Cass County Jail.

5.(b) Defendant Dave Rodgers is the lieutenant of the Cass County Sheriffs Office located in Harrisonville, Missouri. At all times mentioned in this complaint he held the rank as Lieutenant.

6.(a) Defendant S. Burgess badge number 662 is a sergeant of the Cass County Jail who at all times mentioned in this complaint, held the rank as jail sergeant and was assigned to the Cass County jail located in Harrisonville Missouri.

6(b)    Defendant Justin Claibourn is the Sergeant of the Cass County Sheriffs Office who, at all times mentioned in this complaint, held the rank as Sergeant and was assigned to the Cass County Sheriffs Office and Cass County Jail, located in Harrisonville Missouri.

6(c)    Defendant Jennifer Wise is a Sergeant of the Cass County Jail who at all times mentioned in this complaint held both the rank as Corporal and Sergeant and was assigned to the Cass County Jail located in Harrisonville Missouri.

7.    Defendant Jason Heffernan is a Corporal of the Cass County Jail who, at all times mentioned in this complaint held the rank of Corporal and was assigned to the Cass County Jail located in Harrisonville, Missouri.

8 (a)   Defendant Stacy Gunn is a deputy of the Cass County Jail who at all times mentioned in this complaint held the rank of deputy and was assigned to the Cass County Jail located at 2501 West Mechanic Street, Harrisonville, Missouri, 64701.

8 (b)   Defendant T. Monhollen badge number 562 is a deputy of the Cass County Jail who at all times mentioned in this complaint held the rank of deputy and was assigned to the Cass County Jail located in Harrisonville, Missouri.

9.   Defendant Stephen Valentich is a K9 unit Deputy who at all times mentioned in this complaint held the rank of K9 unit Deputy and was assigned to the Cass County Sheriffs Office located in Harrisonville Missouri.

10. Defendant Hendricks badge number 677 is a deputy of the Cass County Jail who at all times mentioned in this complaint held the rank of deputy and was assigned to the Cass County Jail located in Harrisonville Missouri.

11 (a) Defendant Kim Otter is a nurse medical supervisor who is legally responsible to provide adequate medical care to inmates that are in custody of the Cass County Jail who at all times mentioned in this complaint held the rank as medical supervisor and was assigned to the Cass County Sheriffs Office and Cass County Jail located in Harrisonville Missouri.

11. (b) Defendant Advanced Correctional Healthcare is responsible to ~~good~~ provide adequate medical healthcare to pretrial detainees in the Cass County jail. Defendant Advanced Correctional Healthcare is the employer of the contracted

medical personnel of the Cass County Jail and is responsible for the hiring, training, supervising, control, and disposition of its medical employees. Defendant Advanced Correctional Healthcare is located at 3922 W. Barring Trace Ste 2. Peoria, Illinois, 61615.

12. Defendant County of Cass is responsible for the policies, practices, and customs of its Sheriff's Department as well as the hiring, training, supervising, control, and disposition of its Sheriffs, jailers, deputys, and contracted medical employees. County of Cass is and was at all times mentioned in this complaint the employer of all police personnel named herein as well as the contracted medical staff and Advanced Correctional Healthcare. Defendant County of Cass is also responsible for the operation, practice and totality of condition of its jail facility.

13.     Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.

# FACTS

14. Plaintiff Jason M. Potter is a pretrial detainee at the Cass County Jail awaiting for a jury trial in a criminal case that at the time of writing this complaint the jury trial is scheduled for Feb. 23, 2017. On Dec. 20th 2016 Jason Potter waived counsel to proceed Prose, See Exhibit R in support of this complaint. On Dec. 20th it was logged into jail notes that Plaintiff Potter is representing himself pro se, so jail officials will be aware of the much more fundamental right and need of the "right of access to the courts". On Nov. 3rd 2016, Nov 10th 2016, and Dec. 20th 2016, Mr. Potter requested the court to appoint both private counsel **and** in the alternative standby counsel, the court denied this reques

15. Mr. Potter has been prevented from working on his criminal cases as well as his complaint under the civil rights Act of 42 U.S.C. 1983. this has caused delays and actual

being able to assert nonfrivolous claims,
file motions with the courts,
meet fileing deadlines, causeing
impairment on legal claims, and
most important the possibility of
Mr. Potters legal claims being
dismissed because of the "statute
of limitations" which sets a
deadline for how long you can wait
after the events occured. Mr. Potter
was also prevented from fileing a
writ of habeas corpus.

16. Two Cass County judges have ordered
Plaintiff Jason Potter is to have
access to the law library and further
that he is declared Indigent so that
Mr. Potter may be able to prepare
for a jury trial on two different
criminal cases. Those two judges
are J. Michael Rumley and
Stacey Lett. In 2015 and several
times in 2016 both judges order
access to the law library. See
Exhibit C and D in support of this
complaint. See also Exhibit O for
fileing deadlines. Exhibit R shows
Mr. Potter is self represented acting pro se

17.    Jail records will indicate after Mr. Potter correctly used request forms and asked verbally to use the law library, log in records will indicate the defendants Sgt. S. Burgess, Stacey Gunn, T. Monhollen, J. Heffernan, and K. Nevilles did not allow Mr. Potter access to the law library between July 2015 - December 2016. Mr. Potter was also denied access between Feb. 15, 2017 to February 15, 2018. Mr. Potter was incarcerated 816 days in the Cass County jail. Relevant pages of Mr. Potters letter of incarceration are attached as Exhibit M. Exhibits C, D, R, and V is evidence to clearly show its going against two judges orders to prevent Mr. Potter from access to the courts and law library. See also Exhibit MM

18.    On or about July 2016 the law library program expired and would not be accessible until jail officials relicense the software. From Mr. Potters information and belief the program was called Lexis. Sgt. Wise and other jail officials made note of the expiration issue and told Mr. Potter it cost thousands of dollars to relicense the program. Because of the failure to relicense the law library program there is

a huge gap of time Mr. Potter did not get access to the law library whatsoever. Mr. Potter was denied any alternative means of legal research in the limited amount of time Mr. Potter has to meet fileing deadlines. Defendants Jeff Weber, Dwight Diehl, County of Cass, K. Nevilles, Justin Claibourn, and Sgt. S. Burgess are responsible to assure an adequate law library is funded, and that Mr. Potter has rights of access to the courts that are not overly restrictive. Attached are Exhibits C, D, R, O, MM

19. Plaintiff Potter noticed in Dec. 2016 when he finally got to use the inadequate law library, it was running very slowly and would malfunction by kicking him out of his legal research, it also appeared as if a free trial run Fast Case App. was downloaded an attempt to save the county money.

20. Honorable Judge Stacey Lett and Judge M. Rumley did not put any time restrictions for case numbers 15CACR00638 and 15CACR00638-01 when it was in there court rooms from July 2015 throughout Feb. 5, 2018. Relevant papers are attached as Exhibit C.

21. On August 18, 2016 Judge Rumley ordered more law library time and indigent package for case 16CA-CR00007 with two hours per week. Relevant pages are attached as Exhibit D

22. Between December 2016 through February 14, 2017 Mr. Potter **rarely** got access to the law library and was denied any alternative means of legal research in the limited amount of time Mr. Potter has to prepare for a jury trial and meet fileing deadlines pro se. Attached are Exhibits O, R, and V in support of these factual allegations. Mr. Potter made it known to all jail officials and to the defendants Jeff Weber, K. Nevilles, Sgt. S. Burgess, Stacy Gunn, T. Monhollen, and J. Heffernan that he is trying to file a law suit on Deputy Stephen Valentich K9 unit for excessive force, access to the court violations, and for not letting inmates make legal calls. Those defendants prevented Mr. Potter from trying to file his civil rights complaint. Mr. Potter informed

the defendants that someone is also falseifing the Inmate Activity List that often it is falsely logged into jail notes that Plaintiff Potter got to use access to the law library but it is untrue do to fact the law library was unaccessible or not running properly, that often jail officials log into the jail notes that Mr. Potter gained access before they even find out first if the computer is running properly. On Christmas day Dec. 25, 2016 Mr. Potter and Sgt. Wise tried to gain access to the computer law library, but Mr. Potter and Sgt. Wise could not get the program to run properly, it is wrote falsely in jail notes and the Inmate Activity List that on 12-25-16 that Mr. Potter was given 96 minutes Mr. Potter would like video camera footage to show the fact he was not in the law library that long and the fact Sgt. Wise could not get the computer accessed. Attached are Exhibits MM the inmate Activity list log. This list will also show numerous malfunctions with the computer for many months.

23. The excuses Mr. Potter hears from jail officials regarding him not being able to use the law library are:

a.) It is to costly to relicense the old program that expired

b.) The law library is unsecure and hooked to the internet, so do to the fact it is hooked to the internet it is not safe for the security of the institution.

c.) they are having problems getting anything to come up even after reseting it

d.) flaw with the website application "Fast case"

e.) Staff do not have the password

f.) Fastcase is not running properly

g.) There to busy and short on staff

24. On or about November 3rd 2016 to 2-28-17 and numerous other court hearings Mr. Potter made verbal complaints in open court about an inadequate law library, how there is no real law books, how there is no Missouri Constitutions, pretrial motions, templets, forms, no printer, no habeas corpus forms no information on suppression hearings and the fact inmates are denied to make legal calls. The judge Stacey Lett informed Mr. Potter he could exercise his rights and use the grievance system. Mr. Potter also wrote many letters to the Judge Stacey Lett about an inadequate law library. See Exhibit HH

25. On January 17th, 2017 Deputy Marcum told Mr. Potter that the judge wanted to know if the law library was running and if it worked. Deputy Marcum and Mr. Potter met each other in the law library and tried to get any relevant search topics in the search engine query to come up. It should be

noted in log records that again the law library was not accessible. Deputy Marcum informed Mr. Potter he would let the judge know of this reoccurring issue. Relevant pages of log in records are attached as Exhibit MM the inmate activity list. This list also shows many other failed attempts to gain access to law library because of computer malfunction.

26. On Jan. 21, 2017 Corporal Wise met Mr. Potter in the law library. Corporal Wise and Plaintiff Jason Potter were unable to gain access to the law library, there was no password and the page looked like it needed refreshed. Deputy Hendrix said over the loud speaker he would make note in the inmate activity list and get the computer technician to fix the issue. From Mr. Potters information and belief the defendant Justin Claibourn of the Cass County Sheriffs Office is who jail officials refer to as a computer technician. Defendant Sgt. Justin Claibourn is legally responsible to assure access and operation of the law library. Jail officials would not complain to FastCase Customer support because the

defendants Jeff Weber, Dwight Diehl, K. Nevilles, Sgt. Justin Claibourn, Cass County Sgt. S. Burgess never paid for the Fast Case Application. It was a free trial run an attempt to save the county or sheriffs office money. Attached are Exhibits F, G, and H to show the fact it cost money to access forms, documents, etc. This also shows a customer support that evidently was not called because of the refuseal to fund an adequate law library. Logic would dictate the defendants Jeff Weber, Dwight Diehl K. Nevilles, Sgt. Justin Claibourn, Sgt. S. Burgess, and Jason Heffernan would be responsible to make sure the law library is funded. From Mr. Potters belief also the County of Cass would be responsible to see the Cass County jail has placed proper funding for an adequate law library. Attached is Exhibit MM the inmate activity list, notice false log on elapsed minutes for Jan. 21, 2017. of 15 minutes. It also says Law Library attempt not working. There is no way Mr. Potter used _____ for 15 minutes for a program that did not run at all.

27. On Jan. 15, 2017 Mr. Potter request to use the law library, jail officials said they were having problems getting anything to come up. Deputy Comforth said he even tried to reset it. The deputy said if there are any more problems to notify him and he will log it in the records. Log records should indicate the computer technician was requested to fix the problem numerous times

28. On Dec. 25, 2016 it is logged into the notes Mr. Potter got to use the law library but this is untrue do to fact the law library could not be accessible or run properly. Staff have logged into notes that Mr. Potter used the law library before they even find out first if its running properly.

29. On Feb. 9, 2017 Deputy Rew informed Mr. Potter he could use the law library. After Deputy Rew inspected the Fast Case App to see if it was secure and running properly

nothing would work or type in the
search engine. Deputy Rew reset
the computer five times to see
if it would fix the problem, but
all attempts failed. Deputy Rew
made note of it and said he would
put in a work order. See Exhibit MM

30. Plaintiff Potter has had very limited
amount of time to access the
law library through no fault of
his own. The limited amount of
time Mr. Potter was able to
access it, there were numerous
times he was kicked off from
malfunctions and a very
irritating pop-up window would
pop up causing disturbances.
The pop up window kept informing
the Fast Case Application user
that the Fast Case Application
needed renewed and purchased
as if a free trial run subscription
was downloaded an attempt
to save the county or Sheriffs
office money so that the
Sheriffs office staff would not
have to purchase and relicense
the old working software program.

31. Defendants Jeff Weber, Dwight Diehl, County of Cass, Lt. K. Nevilles, Justin Claibourn Sgt. S. Burgess, failure to fund an adequate law library between July 2015 through Feb. 2018 during the 816 days Mr. Potter was incarcerated in Cass County jail, with the fact Mr. Potter was denied all alternative means of legal research all an attempt to save the county and Sheriffs office money, has stopped Plaintiff Potter from working on and file his law suit under the civil rights act of 42 USC 1983. Mr. Potter has been ~~defending~~ ~~his~~ prevented from prepareing his defense for a jury trial causing delays and unwanted continuances, missed fileing deadlines for suppression hearing, prevented Mr. Potter from appeall **his** writ of prohibition to the MO. Supreme Court and to be able to format **it right**, prevented from fileing a state habeas corpus, always denied the pro se indigent supplies, prevented from acting pro se, causing injury to both criminal and civil rights complaint. Attached are Exhibits R to show Mr. Potter is pro se, Exibit O the judges order for fileing deadlines on motions. Also attached are Exhibits C, D, MM, NN

32. Plaintiff Potter has filed many request forms and grievances and asked jail officials to help with alternative proposals to meet the need of legal services. Those alternative proposals that got denied are:

a.) The request for lawbooks, Missouri Constitution, Self Help Litigation Handbook. (See Exhibits MM)

b.) Copys of legal material off FastCase or the Internet

c.) Request for legal calls got denied to try and get an attorney, to meet with that attorney, and get advise. See Exhibit E and CC

d.) Pretrial motion forms, subpoena forms, habeas corpus forms, with any rules or handbooks for those forms to seek the benefit of Rule 91 or other motions

e.) prio se indigent supplies, that policy dictates in Exhibit A artile 5 Sec. 6(6)    (See Exhibit NN)

33. When Mr. Potter request legal forms, legal documents, and templates he is told to get them from the law library or clerk of the court. The fact is the court clerk either denies these forms or most the time does not respond back. The defendants listed in this complaint have not provided the funds to access legal forms and documents in the law library. In support of this claim and factual allegations see Exhibit F to show additional charges apply for accessing documents and legal forms. See Exhibit G to show the law library does not show these search options do to fact they have not ~~pass~~ purchased legal forms set out in Exhibit F.

34. The law library is not hooked to a printer preventing Mr. Potter from printing any legal material. or documents and caselaw. The defendants and all jail officials refuse to go online and print legal material. Because Mr. Potter

has had very little research time and not being able to print or copy, Mr. Potter is forced to use much more time hand writing all legal research, causeing injury by putting limits on research time.

35. Plaintiff Potter used request forms and filed grievances numerous times asking for legal copys and pro se Indigent supplies because policy dictates in Exhibit A, Artictle 5 Sec. 6(6) in the inmate handbook how Indigent pro se inmates can request legal copys and legal material, these request and grievances always get denied or even ignored, without process. See Exhibits C, D, R and V, and NN to show its going against two different judges orders to deny Mr. Potter Indigent supplies and the fact Mr. Potter is representing himself pro se without counsel and without standby counsel. This denial has prevented Mr. Potter from access to the courts. These

denials of Indigent supplies
legal material, copys, and adequate
law library have prevented
Mr. Potter from fileing his civil
Rights complaint of 42 USC 1983
and harming the statute of
limitations Mr. Potter has
on his legal claims. See Exhibit O

36. Jail Records will indicate Mr. Potter
correctly used a request form when
~~Prod~~ Deputy T. Monhollen denied
any extra pro se indigent supplies
legal pad, copys, stamps, envelopes,
etc. Deputy T Monhollen was
made aware of the judges order
and made aware numerous times
which part of the handbook policy
provide for pro se Indigent inmates
    See Exhibit A Artictle 5 sec. 6
Deputy T. Monhollen said he only
has to give me two envelopes
and four pieces of paper.
Being denied additional pro se indigent
supplies is clearly going against policy
and prevents Mr. Potter from prepareing for
trial, unable to meet fileing deadlines
~~scribbled out~~ See Exhibit O as evidence

being denied pro se indigent supplies
and access to an adequate law library
constraints on abilities to obtain
evidence and difficulties monitoring
progress of case. See also Exhibits NN

37.  On March 7th 2016 Deputy Stacey Gunn
and T. Monhollen put Mr. Potter in
segregation. Both deputys made it
very adamantly clear Mr. Potter will
be denied access to the law library.
Both deputys have used threats
numerous times saying they will throw
Mr. Potter in the hole so that he
wont be able to use the law library
These threats, body language, tone of
voice is done with evil motive and malice
See Exhibit K in support of this
complaint.   By not allowing Mr. Potter
access to the law library while in
segregation is going against a judges
order.  Records will indicate that
between March 7th 2016 - March 22, 2016
Mr. Potter was denied law library access
Mr. Potter was held longer in segregation
than the time of punishment because
the jail had overcrowded conditions
with 3 inmates per cell, each cell is fit
for two inmates.

38. When Mr. Potter was released out of segregation, March of 2016, Potter was placed in an overcrowded cell occupied by 3 inmates, causing Mr. Potter to be forced to sleep on the floor, leaving no room to move around, but most of all left no room to be able to do legal work and write. The small desk usage would require any inmate to have to set their ass on the head of someone else's bed, which is an inmate rule out of respect that we don't set our buttock were someone lays there head to sleep. This overcrowded inhumane condition with no table or chairs put limitations and restrictions on access to the courts. Jail Records will show the jail was way over max capacity for several months. Records and testimony would show inmates are locked down about 17 hours or more a day and the day room is not a private place to do legal work without being disturbed.

39. On February 15, 2017 Plaintiff Potter was informed that he is completely cut off from access to the law library.

Jail officials said because a paid attorney is working for mr. Potter and entered their appearance on Feb. 14, 2017 that mr. Potter gets No access at all to the law library. Again this would be going against two different judges orders who never told jail officials that he is to be banned from the law library. Judge Michael Rumley and Judge Stacey Lett never told jail officials to completely deny mr. Potter law library access. This has prevented mr. Potter from fileing his Complaint Under the Civil Rights Act of 42 usc 1983, which can cause legal claims being dismissed because of statute of limitations. mr. Potter was also denied any alternative means of legal research, and given no lawbooks for self help litigation This would also prevent mr. Potter from fileing a Habeas Corpus and from prepareing for a Preliminary Hearing in Judge Michael Rumley court

40. mr. Potter correctly used the grievance procedure on Feb. 15, 2017 to try and solve the problem of

being denied access to a law library or any alternative means of legal research, Mr. Potter received no response to the grievance. Mr. Potter sent two more grievances days apart from each other and still received no response. Relevant pages of grievance procedure policy are attached as Exhibit A Article 2 Sec. 5. Attached is Exhibit Q the declaration of the Pretrial Detainees. Mr. Potter has also submitted both verbal complaints and handwritten grievances about not getting answers or process to grievance complaints.

41. Between the months of December 2016 and January 2017 the prosecutor Randa Morris sent Plaintiff Potter copies of his discovery including two videos on a CD taken from police dashcamera. Sgt. Burgess informed Mr. Potter that he can not have the CD videos, that a request form would need to be sent to K. Nevilles to watch the videos, and how Lt. Nevilles will hold onto that part of discovery.

42. Mr. Potter submitted request forms requesting the jail officials and defendant K. Nevilles to let Mr. Potter watch the discovery videos, these request forms got ignored. Defendant K. Nevilles and S. Burgess are well aware Mr. Potter was representing himself pro se and prove to show a deliberate indifference by failing to respond to Mr. Potters "right of access to the courts" and fail to respond to request forms and grievances. Attached are exhibits C, D, R, and V as evidence Mr. Potter has a serious need for legal services because hes representing himself pro se. Exhibit O and V are clear orders by the judge on fileing deadlines with other serious orders that Mr. Potter was prevented from pursueing. Preventing Mr. Potter from prepare for preliminary hearing, suppression hearing and for a jury trial.

43. Mr. Potter submitted grievances about needing to see the discovery videos

and to make colored legal copies
to prepare for a jury trial in
Judge Stacey Lett court and to
prepare for a Preliminary Hearing
in Judge Michael Rumley's court.
Those grievances got ignored
with no process.

44. On February 20, 2017, Plaintiff Potter
wrote a 9 page grievance, submitting
the grievance to the Cass County
Sheriff, Jeff Weber. The 9 page
grievance explained all issues
that are in ~~this~~ this Civil Rights
Complaint of 42 U.S.C. 1983.
Mr. Potter used a sealed envelope
addressed to Jeff Weber and even
used correct postage stamps, so that
it would be logged into mail records.
Mr. Potter explained to Deputy Funk
the importance of logging this
grievance into the jail mail log
records because of the fact
grievances dont get answered.
Deputy Funk said she would make sure
it was logged into mail records.

45. On February 24, 2017 at 1:30 AM
Mr. Potter spoke with Deputy Funk,
Deputy Rew, and the Sergeant on
duty via the loud speaker intercom
system. Mr. Potter asked if it is in
the records or notes that Plaintiff
Potter is completely denied access
to the law library. Deputy Funk
replied Yes. Mr. Potter informed
Deputy Funk and the Sgt. on duty how
Judge Rumley and Judge Stacey Lett
never gave any orders to completely
ban Mr. Potter from the law library.

46. Mr. Potter told Deputy Funk, Deputy
Rew, and the Sgt. on duty that
when staff learned Mr. Potter was
trying to file a law suit on jail
officials and wrote grievances
about medical illegally taking our
money that staff are retaliating
against Mr. Potter and preventing
him from acting pro se in both
civil and criminal cases. Mr. Potter
asked why the denial? Deputy Rew
and the Sergeant on duty looked into
jail notes and said they are not
allowed to tell as if its a secret
to deny Mr. Potter the law library.

47. Approximately around November 2017 the jail had Turnkey Kiosk machines installed into the day room. Mr. Potter noticed a Justia law library program installed. All inmates could not access court rules, case law, Missouri Constitutions, regulations, forms, Civil procedure and all other documents. Jail staff had a block on most the program and no internet access. Missouri Statutes were the only documents that were accessible.

48. The inadequate Justia Law library was placed in a public setting with many disturbances. Visitation is also on these two Kiosk machines along with other services such as email. If any inmate had a visit, email, or other need of service, Mr. Potter would be forced to surrender the Kiosk so that inmate could have his visit, check his email, etc. This creates no privacy.

49. When Kiosk machines were placed in the day room around November 2017 Mr. Potter was able to submit grievance complaints and most the time got answers to these complaints. Mr. Potter asked why all of a sudden grievances get answered now? The reply was because it leaves a digital imprint. Mr. Potter sent request and grievances asking jail officials to answer all handwritten grievances that were not given process from July 2015 to November 2017. These request were all denied.

50. On November 8, 2017 Mr. Potter submitted a grievance using the Kiosk but from Mr. Potters information and belief this grievance was not processed. Two grievances were filed on Nov. 8, 2017. only one was given process that dealt with denial of legal calls.

51. Plaintiff Potter and many pretrial detainees are denied to make private unmonitored legal calls to there attorney. This has been an ongoing issue since December 2015. See Exhibits E and CC the declaration of many pretrial detainees. Mr. Potter will also have more declarations submitted in support of this claim and factual allegations.

52. Mr. Potters letter of incarceration issued by the Cass County Sheriffs office will dictate that between the years 2015-2018, Mr. Potter was incarcerated for 816 days. Throughout the duration of Mr. Potters incarceration, while the fact Mr. Potter is under the investigation of a crime, Mr. Potter was denied legal calls after he correctly used a request form requesting an unmonitored legal call. This would violate and breach policy. Relevant pages of policy are attached as Exhibit A Article 2 Section 3. that clearly state in the rules every Wednesday inmates will be allowed legal calls

53. Mr. Potter and many pretrial detainees have submitted request forms and grievances asking for legal calls but jail officials always deny these request and grievances and tell inmates they have to use the phones in the day room. Being forced to use the phones in the day room breaks the attorney-client privilege and confidentiality. Relevant pages are attached as Exhibit B, E, and CC

54. The only telephone access Mr. Potter and all pretrial detainees get by using the day room phones, are for collect calls that are around loud disruptive noise do to the fact the day room is also used as inmate recreation area. This public setting and the fact those phones are recorded and monitored breaks the attorney-client privilege. Our expectation of privacy has been violated. Relevant pages in support of these factual allegations are attached as Exhibits B, E, and CC.

55. Mr. Potter and the pretrial detainees are unable to call their public defenders because the Public Defenders Office is blocked calls preventing Mr. Potter and all pretrial detainees from calling their attorney. See Exhibits E and CC attached in support of these factual allegations.

56. Because Mr. Potter does not get legal calls that are private and unmonitored and the fact the phones are for collect calls that are very expensive and require an account to be set up, most law firms will not accept these collect calls. Most law firms have even told Mr. Potter they are not allowed to be talking to him on phones that are recorded, monitored, or in a public setting. This has prevented Mr. Potter from getting an attorney, meet with an attorney, get advise from an attorney, and request for an interview with attorneys Relevant pages are attached as Exhibit B

57. Between the years 2015-2018 that mr. Potter set incarcerated for 816 days under investigation of 3 felony charges, Mr. Potter submitted numerous request forms to speak with a lawyer. Defendants Sgt. S. Burgess, Corporal J. Heffernan Stacey Gunn, T. Monhollen, K. Nevilles and many other jail officials would deny legal calls. Mr. Potter made it clear to all jail officials he would like to speak with a private attorney and seek services from a attorney, that there is also a Conflict of Interest with the Public Defender System. These denials have also caused delays in Mr. Potters cases.

58. While Mr. Potter was representing himself pro se in his criminal and civil cases, Mr. Potter asked Sgt. Burgess, T. Monhollen, Stacey Gunn J. Heffernan, to make legal calls because he has no standby counsel or investigator and also needs to call expert witnesses, the jail officials denied these request.

59. Mr. Potter filed numerous grievances throughout the duration of his incarceration about legal call issues. On December 27, 2016 Mr. Potter asked Deputy Stacey Gunn if he is going to get answers back to these grievances. Deputy Stacey Gunn replied back "You better Not Do That Because her Corporal and Sergeant told her it will be ALL BAD" if Mr. Potter Keeps pressing the issue about legal calls.

60. The only way Mr. Potter was finally able to make a legal call that still was not private, was by getting a judges order to make phone calls. Mr. Potter was forced to submit many complaints to the court to try and get a legal call. Relevant pages are attached as Exhibit V. Mr. Potter was only able to get the legal calls from February 1, 2017 through February 14, 2017. Mr. Potter was completely cut off from access to the phone calls on February 15, 2018

61. Mr. Potters attorney Jessie Steffan bar number 64861 is misinformed by the Cass County rules or custom of not providing legal calls on Wednesdays. The fact is inmates are completely cut off from makeing legal calls. Attached is Exhibit B a letter from the ACLU attorney, who said she is not able to accept phone calls from the phone bank that are in a public setting. Attached also as Exhibit B is the correctly filed request form to request a legal call, that was denied and told Mr. Potter to use the phones in the block that are recorded and around loud inmates in the day room. Forceing Mr. Potter to use the block phones breaks rules of the attorney client privilege and policy in the inmate rule handbook, Attached is Exhibit A Article 2 Sec. 3. This denial of legal call has completely prevented Mr. Potter from talking to his attorney. Attached are also Exhibits E and CC

62. Mr. Potter has submitted request forms and grievance correctly by informing all jail and the defendants he does not want to waive the attorney client privilege and the fact Mr. Potter wants a private, unmonitored legal call

The defendants Jeff Weber, K. Nevilles, Sgt. S. Burgess, Jason Heffernan, Stacy Gunn, T. Monhollen always denied these request and grievances. Mr. Potter used the Turnkey Corrections Kiosk machines when he made it clear to the defendants he does not want to waive the attorney client privilege, and filed those grievances. Mr. Potter got a response to one of the grievances that said "why don't you just go ahead and file the lawsuit you keep saying your going to file". Attached are the Exhibits B, E, CC. Mr. Potter will attach the grievances and complaints and request forms when he is able to get discovery subpoenas from the Turnkey Correctional Kiosk, and jail master file. Not only does this violate policy in Article 2 Sec. 3 attached as Exhibit A. Policy also says inmates will have unrestricted and confidential access to the courts.

63. On February 1, 2017 after Judge
Stacey Lett made an order that
Mr. Potter is to get legal call
to prepare a defense. See Exhibit V.
Mr. Potter was called to the intake
booking desk to make the phone
call were it is loud, disruptive,
not private, not in a private room, and
many inmates were coming back
from court. There was alot of traffic
in the area so Mr. Potter put one
finger in his ear drum and his
face in a standing huddle, as football
players will do when going over plays
to block out noise so that Mr.
Potter can hear his conversation on
the other end of the phone and also
to block out noise so other inmates
do not hear Mr. Potters private
legal matters, as well as staff.

64. While Mr. Potter was placing the
legal call in a standing huddle
on Feb. 1, 2017 to block out noise,
the defendant Deputy T. Monhollen
very disrespectfully hung up Mr. Potters
legal call and said Mr. Potter is
being a smart ... sneaky ... Mr. Potter

informed Deputy T. Monhollen that he is going against a judges order interfering with Mr. Potters legal call and further anything Mr. Potter discuss on this legal call is none of his bussiness so even if Mr. Potter was trying to be sneaky or talk sneaky, Mr. Potter has a right to. Known as "protected conduct."

65. Mr. Potter used the chain of command by speaking with Corporal J. Heffernan about Deputy T. Monhollens misconduct. Mr. Potter told Corporal Heffernan about the loud disturbances when using the booking telephone, how its not in private, and the fact Judge Lett order these legal calls to call witnesses, prepare for trial or even try and get an attorney. Corporal J. Heffernan did try and make it right by putting Mr. Potter back on the phone, but because of this, Mr. Potter dealt with retaliation the next day by Deputy T. Monhollen. On Feb 2, 2017 at about 4:00 PM, Deputy T monhollen said "guess what Potter I ripped up two pieces of your mail.

66. Because of the continuing problem of Deputy T. Monhollen and Stacey Gunn using forms of retaliation, Mr. Potter has had loved ones, family, and other government agencys use caution on what comes through the mail. The two envelopes Deputy T. Monhollen rejected were no threat to the safety and security of the jail. The contents were harmless and only paper, not tape. The way Deputy T. Monhollen announced the mail rejection, tone of voice, clearly was with evil motive to punish. Plaintiff Potter was not given a rejection of mail notice slip, and not given the opportunity to challenge censorship, or appeal this action for it was returned to sender same day. This would violate policy. Exhibit A  Article 2 Sec. 6(23) dictates inmates are suppose to have an opportunity to appeal mail issue. Attached is Exhibit K, N, AA, and DD in support of these claims and factual allegations.

67. On May 11th, 2017 Mr. Potter was arrested and booked into the Cass County jail upon a warrant issued for probation violation number one laws, and a new felony charge was pending and still under investigation. Mr. Potter did not waive his Preliminary Hearing on probation violation number one laws. Mr. Potter informed the probation officers and the defendants Lt. K. Nevilles, Sgt Burgess #662, Corporal J. Heffernan, and Deputy Stacey Gunn and all other jail officials that Mr. Potter wants to speak with an attorney because he is under investigation of a crime and also under investigation of laws probation violation. These numerous request were denied, all jail officials told Mr. Potter inmates dont get legal calls to their attorneys. Policy dictates in Exhibit A Article 2 Sec. 3 that every Wednesday inmates will be allowed to make legal calls. This caused serious delays by preventing Mr. Potter from getting an attorney

68. From May 11 2017 to July 24, 2017 while Plaintiff Jason Potter set incarcerated under the investigation of a crime, Mr. Potter correctly followed the rules and procedure to request an unmonitored legal call and even told all jail officials in the request he does not want to waive his rights to the attorney client privilege. All request were denied. This caused delays in obtaining counsel and further because Mr. Potter had a preliminary hearing before he was able to consult with counsel, all information was used against Mr. Potter when the hearing officers submitted the paperwork to the court. The hearing officers told Mr. Potter they will talk to the detectives and the prosecutor and see I get charged with Felony domestic assault. Mr. Potter submitted an Exhibit at the preliminary hearing that was a declaration stateing Mr. Potter would like to speak with an attorney and Mr. Potter is denied legal calls.

69. When Mr. Potter had court on June 12, 2017 evidence will show attached as Exhibit EE , that Mr. Potter was without counsel. Mr. Potter told the judge in open court how the jail staff refuse to let inmates make legal calls to try an get an attorney. Mr. Potter informed the court how he would like to seek his private counsel.

70. When Mr. Potter was back in court on June 26, 2017 without counsel another counsel status hearing was held on June 27, 2017. Mr. Potter informed the court on those dates and July 24, 2017 how he wished to seek private counsel and how there is a conflict of interest with the public defender system. Because the defendants and jail staff deny legal calls, Mr. Potter experienced long delays on trying to get an attorney and this caused Mr. Potter to set incarcerated longer. Relevant pages are attached as Exhibit M and EE

71. Mr. Potter was arrested on May 11th, 2017 and because the defendants refuse to let inmates make legal calls, it was not until July 27, 2017 that Mr. Potter was able to have his private counsel enter his appearance on two cases in two different court rooms. Over two months two weeks Mr. Potter set incarcerated and prevented from trying to get an attorney. Attached are Exhibits M and EE, of Mr. Potters letter of incarceration, and his attorneys Entry of Appearance.

72. Mr. Potter was served a new warrant on May 10, 2017 and also a new felony warrant approximately around June or July 2017. Relevant pages of Mr. Potters warrants are attached as Exhibit FF. When officers and jail officials served those two warrants and arrested Mr. Potter, logic would dictate the Miranda warnings apply to Mr. Potter because he was under the suspicion of a crime and has a right to try an get an attorney that is in a private setting and unmonitored by

informed

the defendants, all jail officials,
the probation officers, and the court
the need to make a legal call and
the fact Mr. Potter has a scheduled
Preliminary Hearing so needs to seek
counsel and get advise from his
private counsel. Mr. Potter was
denied legal call and unable to
get any advise from his attorney to
be able to prepare for the scheduled
preliminary hearing. All testimony
and information was used against
Mr. Potter when hearing officer
submitted Mr. Potters testimony and
report, violation report to the court.
On June 14, 2017 and May 19, 2017
those reports were sent to the court
and reviewed by the judge. Also
new charges were filed in judge
Michael Rumleys Court. Mr. Potter
has attached Exhibits EE, B, E,
and CC in support of this claim
and factual allegations. Mr. Potter
will also attach grievances and
request forms he correctly filed
in the Cass County jail to request
an unmonitored legal call.

73. Mr. Potter and many other inmates have filed numerous grievances about the legal call issues and even showed the defendants K. Nevilles #627, Sgt. S. Burgess #662, J. Heffernan #678 Jeff Weber, Stacey Gunn, and T. Monhollen #562 how the Missouri Statutes 544.170, 600.048 and policy Exhibit A Article 2 Sec. 3 creates a duty for every person in charge of a jail, to provide inmates private unmonitored legal calls so that they may consult with counsel. The defendants have clearly and deliberately breached the duty to let pretrial detainees consult with counsel violating policy, statutes, and the Sixth Amendment to the United States Constitution. Relevant declarations and statutes violated are attached as Exhibits B, E, and CC. Mr. Potter will also provide more declarations signed by the pretrial detainees between years 2017 and 2018. Mr. Potter will also submit grievances

74. Plaintiff Potter and all pretrial detainees should not have to wait months to try and get a judges order to place a legal call. Often it is to late and the damages are done. Even more so is the fact the calls we get by a judges order is not in a private room. The booking telephone are around a public setting, around officers and inmates which still breaks attorney-client privilege and confidentality. See Exhibit GG

75. Between July 2015 - November 2015 pretrial detainees could make legal calls every Wednesday in a private room. After Thanksgiving of November 2015 from Mr. Potters information and belief the Cass County Sheriffs Office got a new phone system, and because of the new phone system all pretrial detainees suffered and were denied legal calls, through no fault of our own.

76. Mr. Potter made numerous complaints verbally in open court and by letter to Judge Michael Rumley and Judge Stacey Lett. The complaints were about the fact jail officials denying Mr. Potter his fundamental right to access to the courts. Relevant pages of these complaints are attached as Exhibit HH. (see front and back of first page of this exhibit)

77. On November 5, 2016 at approximately 7:30 AM early morning, Deputy Stacey Gunn awoke Plaintiff Jason Potter and his cell mate Daniel Rumbo. Deputy Stacey Gunn informed both Potter and Daniel Rumbo that she is doing a cell inspection for any unauthorized items that jail officials may have given to Potter. Mr. Potter said "the jail staff have allready approved all incoming mail and books. Stacey Gunn replied back "well we are just going to make sure". The New Deputy Hamby and corporal J. Heffernan assisted Stacey Gunn on searching the cell.

78. Mr. Potter told both Corporal J. Heffernan and Deputy Stacey Gunn that all mail and books are approved by jail officials and further Lt. K. Nevilles has a hold on all Plaintiff Potters incoming mail so the administration has allready approved all items.

79. When Mr. Potter informed corporal J. Heffernan that Stacey Gunn was throwing away important costly legal books, religious booklets, and address booklet, Corporal J. Heffernan moved Mr. Potter and Daniel Rumbo about 20 feet farther away from the cell so that Mr. Potter and Daniel Rumbo could not see what Stacey Gunn and Deputy Hamby was taking from the cell. Plaintiff Potter and Daniel Rumbo again told Corporal J. Heffernan that Stacey Gunn is tossing over the rail our personal belongings that have important addresses, and the cell is being tossed around leaving all our legal material, legal discovery, and personal belongings in a disarry or chaos. The Corporal J. Heffernan said to

"just let her do what she does because you know you can't win with her."

80. Mr. Potters cell that was searched left in a disarray chaos, and the fact many costly important personal property items were taken without an inventory report done by any of the officers, and without a due process hearing violates policy. Relevant pages of policy are attached as Exhibit A Article 6 Sec. 2(4) Corporal J. Heffernan witnessed Deputy Stacey Gunns illegal misconduct, was informed of the law books that were being thrown away, went along with it, and failed to correct the illegal misconduct by encouraging the continuation of Stacey Gunns behavior.

81. After the cell was searched on 11-5-2016 and very disrespectfully left in a disarray many of Mr. Potters and Daniel Rumbos personal property items were thrown over the top rail onto the floor. The inmate worker trustees were given the job to

pick up all items off the floor and
place the items in a big moveable
blue toat. Mr. Potter, Mr. Rumbo,
and other inmates witnessed the
inmate worker trustees rummage
through Mr. Potters personal
property and the trustees left off
with the large blue toat. Many
inmates witnessed the trustees
wearing socks and thermals that
came out of Plaintiff Potters cell.

82. Plaintiff Potter had important address
and private information that should
have never fell in an inmate workers
hands. Many of Mr. Potters and
Daniel Rumbos personal property were
given to the inmate workers. The
specific items included two law
books "Bill of Rights and the Constitutional
Amendments", "Cohen and Olsons Legal
Research in a Nutshell". Two
booklets published by "Our daily Bread".
Many items of clothing were also
thrown over the rail to the trustees
such as socks, thermals, t shirts.
Pens purchased from canteen or

Mr. Potters law dictionary was torn in half and half the dictionary was thrown away over the rail. Attached is Exhibit II as evidence Defendant Stacy Gunn wrote an incident report and she admits she removed mass amounts of personal property and books from Plaintiff Potters cell and the fact they were disposed of without an inventory report or due process. The personal property was given to the inmate trustees and lawbooks were thrown away without a due process hearing. By throwing away lawbooks without an inventory report this violated policy in the inmate rule handbook. Relevant pages of policy are attached as Exhibit A Article 6 Sec. 2 (4) Defendants Stacy Gunn and Jason Heffernan acted very reckless with deliberate indifference they were made aware of the law books and personal property being thrown away. Mr. Potter was punished for having these items of personal property that other jail officials approved

these items of personal property they issued to Mr. Potter.

Attached also to Exhibit II is the violation report to show the defendants Stacy Gunn intentions are to punish. Both Potter and Daniel Rumbo requested a hearing on the violation but was denied the hearing or ignored. Plaintiff Potters and Daniel Rumbos personal property was given to other inmates, one inmates name was Kidwell. Attached is also Exhibit K. Evidence and jail records show the fact that Deputy Stacy Gunn and Jason Heffernan who always work together the same shift were the only officers to write conduct violations on Plaintiff Potter. No other shifts would write violations on Mr. Potter the whole 816 days Mr. Potter sit incarcerated This is clear evidence of the retaliation Mr. Potter experienced, and the defendants Stacy Gunn, Jason Heffernan, and S. Burgess adverse actions are directly related to Mr. Potters protected conduct.

83. Mr. Potter and Daniel Rumbo noticed there personal belongings were very dissrespected so much that a law dictionary was tore in half. Mr. Potter was never able to find the other half of that dictionary. Mr. Potters and Daniel Rumbos legal material were cluttered together as well as there bed roll materials all mixed together.

84. When Deputy Stacey Gunn and Corporal J. Heffernan took and threw away Plaintiff Potters two legal books that were allready approved through incoming mail by other jail officials, this was a form of retaliation for using the grievance system, and to try and file a law suit. The defendants also knew Mr. Potter was trying to write the A.C.L.U, Fox 4 Problem Solvers, and the Kansas City Star, that all inmates signed that was intercepted by Sgt. J. Burgess and prevented from going out. In support of ~~Deputy Stacey Gunn~~ this complaint and factual allegations

attached are Exhibits K
a declaration signed by many pretrial
detainees.

85. When Deputy Stacey Gunn and
Corporal J. Heffernan unlawfully
deprived Plaintiff Potter of his two
legal law books on Nov. 5, 2016
without a due process hearing
like policy dictates in Exhibit A
Article 6 Sec. 2 (4) these actions
caused delays on asserting Mr. Potters
legal claims, caused impairment
of legal claims, caused Mr. Potter
to miss fileing deadlines, prevented
Mr. Potter from acting pro se, would
cause Mr. Potter to not be able to
prepare for a trial and have a fair
hearing, and was done in bad faith
to prevent Mr. Potter from fileing
his habeas corpus and his
civil rights complaint under the
Civil Rights Act 42 USC. 1983. In
support of these factual allegations
attached are Exhibit O, Exhibit II
front and back pages to show its a
judges order to have all motions filed
no later than 7 days before trial. Attached

are also Exhibit R that shows Mr. Potter is Pro se.

86. With the fact Mr. Potter was not accorded an adequate law library, and no self help litigation books, Mr. Potter had a much needed use for the two law books that were deprived. It left Mr. Potter with no law books whatsoever and the fact his writing pens were taken didn't help.

87. Both Daniel Rumbo and Plaintiff Potter spoke with the inmate workers that were allowed to rummage and keep what they wanted of the personal property. Rumbo asked trustee Kidwell if we could get our clothes back because its cold and the fact that trustee was wearing Mr. Rumbos socks and thermals. The inmate worker said for a bag of Keefee Coffee he would make sure we get most our clothes back. Mr. Potter will use the testimony of Daniel Rumbo other jail officials and hopes of camera footage in D-pod 11-5-2016.

88. During the unlawful search of                    1
    Mr. Potters cell on 11-5-2016
    Deputy Stacey Gunn threw away two
    religious booklets by Our daily bread
    ministries without any due process
    or inventory report. All jail officials
    know it is traditional and habit
    before lockdown we read the
    daily reading, we pray as a group
    together, and this keeps unity
    and peace and we all pray we will
    humble ourselves and get along. This
    was a form of retaliation by Deputy
    Stacey Gunn when she deprived and
    threw it away. Exhibit P is also
    attached as evidence the Daily Bread
    gets rejected through incoming mail
    without any due process by Deputy
    Stacey Gunn. All other jail officials
    have always approved this booklet.
    Attached is also Exhibit K

89. Plaintiff Jason Potter in October 2016
    had inmate pretrial detainees sign
    declarations that would go to the
    A.C.L.U., Fox 4 Problem Solvers,
    and the Kansas City Star, regarding
    the issue of inmates not being able

to make private unmonitored legal
calls. An inmate by the name of
Timothy Kidd asked if he could sign
the declaration, but instead of him
signing it he turned the declaration
into jail officials to get favors
and preferential treatment he does
not qualify for. Attached is Exhibit J
a declaration signed by Mr. Potter
and the pretrial detainees.

90. The declarations that were prevented
from going out October of 2016
that inmate Timothy Kidd #535629
gave to Sgt. Burgess and Lt. K. Nevilles
in exchange for favors he does not
qualify for. Those favors include
the work program so that he can
smoke, eat extra food, make free
booking telephone calls, and go
outside for fresh air. These are
favors and preferential treatment that
no other pretrial detainees get
unless they are trustees. Inmate
Timothy Kidd does not meet the criteria
to be approved as a working inmate
trustee. Attached is Exhibit A
Article 5 Sec 7 of policy and rules

that provides inmates cannot have
violent felony crimes or been charged
and convicted of violent charges.

91. Inmate Timothy Kidd D.O.C. # 535629
clearly shows in Cass County jail and
prison records a long history of violence,
and was charged with and convicted
of 1st Degree Felony Assaults. Further
violations for bringing tobacco and
contraband into facility. This record
will clearly show Mr. Kidd does not
meet the criteria to be a trustee
Attached is Exhibit A Article 5 Sec. 7

92. As soon as trustee Timothy Kidd turned
the declarations into jail officials
Sgt S. Burgess # 662 and the defendant
Lt. K. Nevilles # 627, that those said
declarations were suppose to have went
to Fox 4 Problem Solvers, Kansas City Star
and A.C.L.U. Mr. Potter did in fact
experience retaliation and the defendant
K. Nevilles put a hold on Mr. Potters
mail. The hold lasted for months at a time
causing very long delays on both
incoming and outgoing mail. The hold

Case 4:19-cv-00084-FJG   Document 1   Filed 01/30/19   Page 72 of 184

were done in bad faith and the jail Lieutenant K Nevilles made this order and decesion to unlawfully put a hold on Mr. Potters mail.

93. When the jail administration Lt. K. Nevilles put a hold on Mr. Potters mail, Mr. Potter did not receive his incoming mail for weeks at a time, and when Plaintiff Jason Potter did receive incoming mail it had a red stamp that it arrived 2-3 weeks before it even got delivered to Mr. Potter. This caused unwanted delay and violated rules and policy. Attached are relevant pages of policy as Exhibit A Article 2 Sec. 6(14).

94. The defendant K. Nevilles and Sgt. S. Burgess who were in collusion with each other on the mail hold issue, did not provide any due process on notifing when mail was rejected. So Mr. Potter was never given the opportunity to appeal any action concerning his mail, because of the failure to notify of mail rejections. Attached is Exhibit A Article 2 sec 6 (23)

that provides inmates shall have the opportunity to appeal any action concerning there mail. Article 2 Section 6 (13) dictates that inmates will be notified within 24 hours when jail staff is made aware any incoming mail is undeliverable. Article 2 Section 6 (12) provides that mail is not to be read for content except were there is reliable information that there is an existing threat to order and security.

95. When Lt. K. Nevilles put a hold on Mr. Potters mail, the privileged mail was held for long periods of time. the privileged mail was not examined in Mr. Potters presence, and the privileged mail was read and rejected for content. Mr. Potter was not given any notice when privileged mail was rejected and the failure to give notice harmed and prevented Mr. Potter from challenge any censorship or appeal any action concerning mail. Attached is Exhibit L as evidence the Citizens Commission on Human Rights sent Mr. Potter information that was

rejected. Defendants K. Nevilles, Deputy Stacey Gunn, and Sgt. S. Burgess did not log into the mail log that these were rejected. This violates there own rules and policy set out in Exhibit A Article 2 Sec. 6

96. The Citizens Commission on Human Rights is a watchdog and clearing house for information and reporting crimes and complaints that even provide attorneys, law enforment and investigation. These include multiple agencies, DEA, FBI, Criminal Division on Fraud, Department of Health and Human Services, Health Care Fraud, Medicaid Fraud and many more agencies.

97. When the defendants K. Nevilles, J. Heffernan Deputy Stacey Gunn, Sgt. S. Burgess and corporal Heffernan rejected mail from the Citizens Commission on Human Rights it was an attempt to stop Plaintiff Potter from exercise of his rights and access to the courts It was rejected to also stop Mr. Potter from filing a complaint with the

proper authoritys, to prevent Mr. Potter
from using the Abuse Report Form.
Mr. Potter filed numerous grievances
on medical Health Care Fraud or
the fact medical and the defendants
illegally take our money for health
care expenses. Also the fact
pretrial detainees get no health
insurance. In support of the allegations
of the defendants illegally taking our
money, attached is Exhibit S.
In support of all allegations of the
fact the defendants K. Nevilles,
Sgt. S. Burgess, Corporal J. Heffernan,
Deputy Stacey Gunn, Deputy T. Monhollen
not providing any due process when
they reject mail attached are the
Exhibits K, AA, and DD, and L.

98. Deputy Stacey Gunn rejects mail and
does not notify Plaintiff Potter when
she rejects mail even after she has
been asked to many times to give notice.
Defendant Stacey Gunn reads every
piece of mail for content to be nosy,
snoopy, to retaliate. Her behavior is
done with evil motive and malice to
injure Plaintiff Potters Criminal

and Civil Rights Complaints. Deputy
Stacey Gunn displays evil motive
with reckless and callous indifference
towards Plaintiff Potter and other
inmates. producing a ripple effect
causing actual injury in many forms.
Relevant pages are attached as
Exhibit K the declaration signed by
the pretrial detainees. Deputy
Stacey Gunn reads every piece of
mail to be snoopy and nosy and is
an invasion of privacy that violates
policy and rules. Relevant pages
of policy are attached as Exhibit A
Article 2 Sec. 6 (12)

99.    When the jail administration K. Nevilles
placed the hold on Mr. Potters mail
Oct. 2016 through December 2016
and again in 2017 all of Mr. Potters
privileged mail was held for long
periods of time and was not examined
in Plaintiff Potters presence and that
privileged mail was read and censored
violating policy. Relevant pages of
policy are attached as Exhibit A
Article 2 Sec. 6 (11)

100. The defendants K. Nevilles, S. Burgess, J. Heffernan, T. Monhollen, and Deputy Stacey Gunn violated policy, due process, and Mr. Potters right to correspond with his loved ones, who is also someone who helps with reference to legal matters. Attached is Exhibit N letter from Jennifer George who she has also taken carefull consideration on using the mail rules. The fact is when mail gets rejected without any due process, the defendants are retaliating against Mr. Potter for using the grievance system, and because all defendants are aware Mr. Potter was trying to file a Civil Rights Complaint. It keeps happening over and over and has became a form of punishment and campaign of harassment.

101. A lady and friend of Plaintiff Potters by the name of Kathy Hasenyager who she retired in good standing from the United States Postal Service made a complaint to the Cass County Sheriffs Office over the phone January 2017 because

the Defendant Stacey Gunn did
not provide any due process when
she rejected 5 christmas cards
that were no threat to the
safety of the institution. Five
cards in five seperate envelopes,
addressed to inmate Landon Boynton.
Kathy also sent Mr. Potter a
Christmas card and New Years
card December 2016. Deputy
Stacey Gunn did not notify Mr. Potter
she rejected these cards, and so
this would prevent Mr. Potter from
knowing mail was rejected to be
able to challenge or write a
grievance, to be able to give Mr.
Potter opportunity to appeal any action
concerning his mail.

102. The defendants K. Nevilles, S. Burgess
J. Heffernan, T. Monhollen, and Stacey Gunn
rejected mail from the National Lawyers
Guild, Center for Constitutional Rights
Citizens Commisson on Human Rights,
Sovereign Health Group Center, and
Southern Poverty Law Center between
Oct. 2016 to February 2017. These
agencies or help with Mr. Potters

Civil Rights Complaint and access to
the courts. These items of mail
that was rejected without any due
process are always attempts to try
and put a stop to Plaintiff Potters
federally protected rights.

103. On December 30, 2016 Deputy T. Monhollen
did not notify Plaintiff Potter that he
rejected mail content by Darla Durham
It is not logged into mail records.
Mr. Potter asked Deputy Monhollen why
he rejected this mail without any
notification slip. Deputy T. Monhollen
stated the mail had two blank pieces of
paper. Logic would dictate two blank
pieces of paper do not pose a threat to
safety and order of the jail. Because
the defendants fail to notify of mail
rejections and failure to log all the
incoming mail into jail records this
calls into question how many other mail
rejections have not been accounted for
that could have come from family,
loved ones, and other government agencies
for accessing the courts. Relevant
pages are attached as Exhibits K,
AA, N

104. On or about the month of November 2016 Steven Edmundson mother sent an article addressed to Mr. Potter. The article was about excessive case loads with the Public Defender System by Director Michael Barrett. Deputy Stacey Gunn rejected the article without any due process, so Mr. Potter was unable to challenge censorship and rejection The only thing in the envelope was the article 2 pages long that pose no threat to the safety of the jail. Mr. Potter needed this article for court to better explain to the judge inneffective assistance of counsel issues he experiences because his public defender is over case loaded. This rejection prevented Mr. Potter from attaching the article as an Exhibit when he filed a motion to discharge counsel. The same day a letter from Mr. Potters mom was also rejected with evil motive and callous because she was mad Potter read her a rule out of the rulebook about how she is not suppose to read mail for content, and how she suppose to notify inmates when she

rejects mail. Attached is Exhibit K
and Exhibit AA the declarations
signed by pretrial detainees.

105.   On December 27, 2016 Plaintiff Potter
was called to the bubble by
Stacey Gunn during mail call. Mr. Potter
asked Deputy Gunn if she had rejected
any mail of Mr. Potters. Deputy
Stacey Gunn with a real hatefull
attitude replied back "Mr. Potter
if you ever ask me that again I
will put you in segregation and
you will not get to use the law
library". Landon Boynton and other
inmates heard this threat.

106.   On January 9, 2017 Deputy Stacey Gunn
opened and examined without Mr. Potter
being present his incoming mail that is
clearly labelled that it came from
Cass Regional Medical Center. This
clearly violates Mr. Potters medical
confidentiality. Attached is Exhibit K
that clearly shows Stacey Gunns
actions are not with good intentions.

107. On January 19, 2017 the defendant
Stacey Gunn violated policy Article 2
Sec. 6 (11)(a) that dictates mail from
the court and government agencies
are to be examined for contraband
infront of the inmate. Policy in
Exhibit A Article 6 Sec. 2 (3a) dictates
inmates have the right to unrestricted
and confidential access to the courts
via correspondance on matters
pertaining to their case and conditions
of confinement. The legal mail
Deputy Stacey Gunn opened without Potter
present was from two government
agencies. Harrisonville Municipal Court
and the Harrisonville City Police Dept.
This violated Mr. Potters privacy and
confidentiality.

108. During the month of March 2017 many
pretrial detainees informed Plaintiff Jason
Potter how their ~~~~~~ mail gets rejected
without being notified or "proper due
process." The inmates in the nextdoor
known as E-Pod further said their
"mail is always getting fucked with"
was there choice of vocabulary.
The E-Pod inmates informed Mr. Potter

that the defendants Stacey Gunn,
T. Monhollen, and even Corporal J. Heffernan
are always the ones who mess with
these mail and provide no type of
notification or due process whatsoever.
Relevant pages are attached as
Exhibits AA, DD. Exhibit DD is
a declaration by Philip Lee Shipley.
Exhibit AA is a declaration signed
by many pretrial detainees. See also
Exhibit K.

109. On Feb. 3, 2017 at 2:40 AM Plaintiff Potter
used the chain of command requesting
to speak with Sgt. Monroe. Deputy
Brooks and Deputy Thorton were present
when plaintiff Potter gave notice
about the retaliation he and other
inmates experience, about all incoming
mail issues, legal call issues, how
grievances get ignored, how request
forms get ignored, how Deputy Gunn
told Mr. Potter verbally over the
intercome "Better Not Keep Writing
Grievances or it will be all Bad",
how Stacey Gunn threw away Mr. Potters
law books and Daily Breads without any
due process hearing. Sgt. Monroe took

note of all these complaints and said
he would speak with Lt. Nevilles
first thing in the morning.

110. Sgt. Monroe said a few other inmates
have made similiar complaints includeing
a inmate that was in protective
custody by the name Samuel Bray
with a D.O.C. number 1054798.
Samuel Bray was on his hour out walking
and he said his grievances dont get
answered back also. Mr. Potter has
attached Exhibit Q a declaration
signed by many pretrial detainees who
have witnessed Mr. Potter correctly
follow the rules and procedures in
fileing grievances.

111. On Feb. 3, 2017 at about 3:15 AM
Plaintiff Potter and Sgt. Monroe took
a look in Mr. Potters inmate property
located in the storage room. Sgt. Monroe
and Plaintiff Potter noticed a manilla
envelope that was sent to Mr. Potter
early January 2017 by the Sovereign
Health. This package was not logged
into mail records and both the sender
and Plaintiff Potter were not notified
of this rejection. Sgt. Monroe said

he does not know why this envelope
would be rejected because he
sees no problem with it. Sgt. Monroe
gave this envelope or package to
mr. Potter. Attached is Exhibit Z
as evidence Sovereign Health
offers court services, and treatment.
Mr. Potter and Sgt. Monroe noticed other
letters and pictures that were in
inmate property storage that were
never given rejection slips of which
officer rejected the mail.

112. Attached is Exhibit Z (front and back)
as evidence the Sovereign Health Group
offers a wide variety of services that
include Court Services that function as
a patient advocate. Because of
Proposition 36 these Court services
team works with attorneys who
represent clients and present to the
courts comprehensive treatment plans.
Other services include treatment,
addiction, mental health, trauma,
dual diagnosis. When the defendants
reject Mr. Potters mail without notice
from all groups or organizations that
help him these rejections have been

done with evil motive and retaliation
This is a reoccuring issue even
after Mr. Potter has requested
and used grievances asking to stop
the illegal misconduct and to notify
him when mail gets rejected. Evidence
shows in Exhibits L, K, N, AA, DD, P
that these rejections never properly
get logged into inmate mail log records
and its done with evil motive to
punish and has turned into a campaign
of harassment. This is always an
attempt to stop Mr. Potter from any
protected conduct.

113. When Mr. Potter was put into segregation
on March 7, 2016 to March 22, 2016
Mr. Potter was put into segregation
without a due process hearing to
determine whether a rule had been
broken. On the way to the hole
defendant's Stacey Gunn and T. Monhollen
took and gave away for public use
Mr. Potters personal property that
included two writing legal pads,
5 manilla envelopes, postage stamps,
writing pens, irish spring soap, toothpaste
brand new t-shirt, boxers, and other

manilla envelopes that had return
addresses on them that were approved
through incoming mail that held orderly
and safe legal documents, legal research,
and mail.

114. All of the personal property that was
deprived from Mr. Potter on 3-7-2016
as included in paragraph 113, was
done without an inventory report.
Mr. Potter was not given any property
removeal slips. This would violate
policy and rules. Exhibit A Article 6
Section 2 is attached which provides
pretrial detainees are to get a due
process hearing. This deprivation
of Mr. Potters property was done
to punish Mr. Potter. The fact is
from Mr. Potters information and
belief is Mr. Potter was given a
conduct violation and was put into
the hole as punishment for having
postage stamps, legal writing pads,
t-shirt, boxers, socks, toothpaste,
and irish spring soap. Defendants
Stacey Gunn and T. Monhollen said
those items are contraband, yet
those are sold on commissary.

The fact is Mr. Potter was punished
and placed into segregation
for having hygene material
that Mr. Potter would need
to bathe, and for having
essential legal material
such as paper, envelopes, manilla
envelopes, stamps, so that
Mr. Potter can file documents,
motions, and civil rights
complaints to the court.
Attached is Exhibit JJ to show
the fact defendants Jason Heffernan
Stacy Gunn, and T. Monhollen
deprived Mr. Potter of his much
needed legal supplies, and
hygene material which would
be needed for any "protected conduct"
This was done with malice to
stop Mr. Potter from fileing
his civil rights complaint against
the defendants, and prevented
Mr. Potter from fileing motions
to the courts. Mr. Potter will
also attach Exibits NN
to show the fact Mr. Potter
was denied pro se indigent
supplies, and Exibit JJ shows jail
officials know Mr. Potter is indigent by court.

115. The personal property that was deprived from Mr. Potter on 3-7-2016 was not placed in storage, or in Mr. Potters personal property, it was given away for other inmates use, without any due process. Most of the stamps were sent to Mr. Potter through the mail, incoming mail, by the sender Coleena Lopez. Coleena Lopez is also someone who sent Mr. Potter 2 law books that defendant Stacey Gunn threw away.

116. When the defendants Stacey Gunn and T. Monhollen deprived Plaintiff Potter of the much needed postage stamps, and essential legal items on March 7, 2016 and punished Mr. Potter for having those legal material by placing Mr. Potter into segregation, this was unconstitutional because this prevented and stoped Mr. Potter from fileing his Civil Rights Complaint on time, Mr. Potter could not afford postage, legal pads, and other ~~legal~~ legal items. This also hindered Mr. Potter from gathering evidence, or constraints on Mr. Potters ~~~~ abilities to obtain

evidence and difficulties monitoring
progress of case. In paragraph 36
Mr. Potter claims he was denied
any prose indigent legal supplies,
which is going against a judges
order. Attached are Exhibits C, D
to show two judges have numerous
times declared Mr. Potter Indigent,
so that he can able himself to the
prose indigent supplies. See also
Exhibits HH.

117. Depriving Mr. Potter of his postage
stamps, legal material, writing pad,
envelopes, on 3-7-2016, and also
never according Mr. Potter his indigent
prose legal supplies has severely
limited Mr. Potter on his right of access
to the court. Mr. Potter was often
forced to break jail rules when he
traded food off his tray in exchange
for some writing material or even
hygene items. Mr. Potter would
be forced to try and trade his
meal trays for legal supplies when
often Plaintiff Potter did not really
want to have to go hungary. Being
forced to trade food for legal

supplies and hygene broke rules in the inmate handbook. Attached as Exhibit A Article 1 Sec. 72 bb and Article 1 Sec. 11(3) are relevant rules that dictate inmates are not allowed to borrow, lend, and trade. Mr. Potter will also attach the violation report to show Mr. Potter was punished and put into segregation. See Exibit JJ

118. When defendants Stacey Gun and T. Monhollen placed Mr. Potter in the hole 3-7-2016 for the contraband legal material, and hygene, it was done to punish and retaliate against Mr. Potter. Defendant Stacey Gunn always made sure to tell Mr. Potter "Now you cant use the law library while your in the hole". This is only one form of retaliation Deputy Stacey Gunn has used and there was much more. Deputy Stacey Gunn retaliated against Mr. Potter for using the grievance system and because the defendants know Mr. Potter was trying to file a law suit on them. By deprive Mr. Potter of legal supplies, throwing Mr. Potter into segregation, throwing away the

two lawbooks, dening Mr. Potter the
prose indigent supplies, preventing
Mr. Potter from access to the library
while he was in segregation, with the
fact the law library is inadequate,
dening Mr. Potter legal copies,
the law library is not hooked to
a printer, no access to legal
forms, has added up to create
an overall effect that is
unconstitutional and has stoped
Mr. Potter from fileing his civil
rights complaint, prevented
Mr. Potter from acting pro se
on both criminal cases, prevented
Mr. Potter from fileing a pro se
habeas corpus, prevented Mr. Potter
from meeting fileing deadlines, and
prevented Mr. Potter from preparing
a defense for trial. Attached
are Exhibits K, HH, V, R, O,
C, D, and Q, and JJ

119. Evidence attached as Exhibits M and O
will show the fact Plaintiff Jason Potter
was a pretrial detainee who had not
plea guilty or been found guilty of
the crime he was incorcerated for.

Between July 2015 to March 27, 2017 to
2/15/18 evidence will show in Mr. Potters
inmate bank transaction list that
fees were deducted from Plaintiff Potters
account creating a negative balance
for the cost of medical attention, doctor
and nurse visits, and medicine. By
illegally deducting money from Mr. Potters
account the defendants Jeff Weber,
Dwight Diehl, K. Nevilles, S. Burgess,
Kim Otter, Stephen Valentich, and
J. Heffernan are violating policy in
the inmate rule handbook. Relevant
pages of policy are attached as
Exhibit A pages 20-21 Article 8 Sec 2-3
Policy dictates in the inmate rule
handbook that RSMO 221.120 that is
in accordance with RSMO 221.070
that no money can be taken from
any pretrial detainees account until
a plea of guilty or finding of guilt
for such offense. Furthermore it is
not enough to just take Mr. Potters
money because it takes a court order
having criminal jurisdiction in the
county to satisfy such expenses.
Relevant pages of the negative balance
in Mr. Potters account are attached as
Exhibit T.

120. Policy in the inmate rule handbook Exhibit A
Article 8 Section 2-3 and both statutes
RSMO 221.120 and RSMO 221.070
are clear and unambiguous a
statutory mandate. that only allows
the recovery of cost for confinement
and medical attention after a
guilty plea or finding of guilt.
Attached is Exhibit I Attorney
General Chris Koster opinion,
Opinion No. 124-2009 who he also
says the Sheriff may not charge
fees before a person has entered
a guilty plea or had an adjudication
of guilt.

121. (a) Attached as Exhibit T clearly shows
negative balances in Plaintiffs
account for the cost of medical
care before he even plea guilty,
this illegal taking of money without
any due process has happened to
thousands of pretrial detainees.
Relevant pages are attached as
Exhibit S a declaration signed by
numerous pretrial detainees. Mr. Potter
will also use the testimony of Matthew
Volland and Matthew Scroggs or any

b.)   When Plaintiff Jason Potter was booked into the Cass County jail on July 8, 2015 through May 5, 2016 Mr. Potter did not sign into any agreements or contracts for jail officials to take or deprive Mr. Potter of money for medical attention.

c.)  On July 25, 2016, and May 11, 2017 upon being booked into the jail, jail officials and Deputy K. Harris badge number 559 forced Mr. Potter to sign into a contract he did not want to sign. Jail officials said if Mr. Potter did not sign the bottom signature line that jail officialls will put Mr. Potter into both protective custody and into suicide watch because of 2 of the 5 paragraphs in the contract. Mr. Potter would be under 24 hour lock down, butt naked, no sheets, no bedding material, no sleeping mat, different food items, and under constant surveliance known as suicide cell watch, if Mr. Potter did not sign the contract. The contract is attached as Exhibit I. The court

shall be informed of the fact that Plaintiff Jason M. Potter did not sign the very top paragraph to agree to take money for medical attention. Anyone can tell that Deputy Kevin Harris forged Mr. Potters name into the top paragraph. Because of paragraphs 3 and 5 of the contract Mr. Potter was forced to sign the very bottom signature of the contract. Mr. Potter was forced to, coerced physically and mentally to sign the contract. Mr. Potter did not want to experience undue suffering under suicide watch were privileges and rights are taken, which would also be very embarrassing and worse than any punishment. Mr. Potter will get other evidence and records from the Turnkey Corrections Kiosk machine when he is able to get discovery and subpoenas.

122. From Plaintiff Potters information
and belief their is nothing in policy
or the inmate rule handbook that
gives the defendants Kim Otter *Advanced Correctional Health*
Cass County, Jeff Weber, Dwight Diehl, K. Nevilles,
S. Burgess, Stephen Valentich, and
J. Heffernan the authority to ~~sign~~
deduct $20-30 dollars every time
Mr. Potter sees the nurse or doctor.
This amounts to inadequate notice,
inadequate authorization procedures,
inadequate post-deprivation process,
inadequate post deprivation process
for challenging erroneous fee
assessment, wrongful appropriation
of money and property, medical health
care fraud, inadequate authorization
regardless of whether inmates sign
a form, and mismanagement for
non-compliance with federal, state,
and local laws. Attached is
Exhibit A the inmate rule handbook
policy. Attached is also Exhibit I
the opinion of the Attorney General
Chris Koster who clearly shows
RSMO 221.070 that no sheriff
has the authority to charge fees

only

the courts have authority to charge these fees after a pretrial detainee has plea guilty or been found guilty. A judge would have to sign an order assessing cost of medicine and medical attention as costs.

123. From Mr. Potters information and belief a judge never signed an order assessing cost of medicine and medical attention for the simple fact Mr. Potter had not yet been convicted, so to sign an order, would to act beyond its authority and its acts would be void. Furthermore Mr. Potter never received a court hearing or notice of a court hearing on the motion to assess cost of medicine and medical attention pursuant to 221.070 and 221.120 that was electronically filed on October 28, 2015. Relevant pages are attached as Exhibit I to also show a judge never signed an order to assess cost of medical attention, because Mr. Potter was not convicted

number 124-2009 it is also attached
as Exhibit I.

124. By the defendants illegaly deducting
money from Plaintiff Potters inmate
bank account leaving a negative
balance, violating policy that is
in accordance with RSMo 221.070
and 221.120 the defendants
Jeff Weber, Dwight Diehl, Kim Otter,
Jason Heffernan, K. Nevilles,
Stacy Gunn, T. Monhollen, and
S. Burgess are violating
Mr. Potters due process, these
illegal actions haved caused
actual injury to Plaintiff Jason
Potters right to access to the
courts, Mr. Potter has been
forced to choose between two
constitutional rights of purchasing
medical attention or to purchase
essential legal material, such
as copys, stamps, paper, to
be able to file legal documents.
Because of the fact all defendants
deny the pro se indigent supplies
and illegally deprive Mr. Potter of

attention, this has prevented Mr. Potter from fileing his civil rights complaint on the defendants, prevented Mr. Potter from acting pro se in both criminal and civil complaints, Mr. Potter was unable to afford legal copys or unable to purchase them, prevented Mr. Potter from meeting fileing deadlines, and to prepare a defense for trial. There is a huge difference from the defineation of regular indigent supplies and pro se indigent supplies. Defendant Kim Otter is misinforming testimony in her grievance response. Mr. Potter was NEVER given pro se indigent supplies. Mr. Potter was only given two stamps and 4 pieces of paper a week to be able to communicate with family. Relevant pages of Mr. Potters grievances are attached as Exibit KK, Mr. Potter will also attach numerous other grievances when he is able to get

denied on the grievances in Exhibit KK Mr. Potter submitted 3 other hand written grievances and never got any responses to the grievances. When Turnkey Corrections installed Kiosk Machies around November 2017 Mr. Potter submitted more grievances using that Kiosk Machince. Mr. Potter will provide those grievances when he is able to subpoena those jail records.

125. On march of 2016, Plaintiff Jason Potter filled out request forms to see the doctor and surgeon about multiple cyst and other unknown bumps on the testicles, and mass cyst. The doctor ordered a sonagram to be done, and the nurse medical supervisor Kim Otter said she would have to get it approved by jail officials to even be able to let Plaintiff Potter get the sonagram done. The defendant Sgt. S. Burgess was present at the time Mr. Potter was seen by the doctor, and so defendant S. Burgess knew about

126. Over one month passed by and Mr. Potter asked defendants Kim Otter, S. Burgess, and corporal Jason Heffernan if its approved to get the doctors ordered sonagram done. Kim Otter replied that it would cost $125.00 if I Mr. Potter want the sonagram ultrasound done and Kim Otter lied and ~~said~~ said Plaintiff Potter would allready have to have the 125.00 on the inmate spend account, and this would violate policy. Attached is Exhibit A Article 8 Section 1 (10) policy dictates that no inmate will be denied or refused medical treatment because of lack of funds. Article 8 Sec. 2 and 3 provides RSMO 221.120 that is in accordance with RSMO 221.070 that no money can be deducted from pretrial detainees account for medical cost until a plea of guilty or finding of guilt for such offense and then it also takes a court order to satisfy such expenses. Relevant pages are attached as Exhibit I, and Exhibit A from Mr. Potters information and belief

that ~~~~ insurance

on all pretrial detainees to cover
medical cost, or the jail would
subcontract medical attention for
pretrial detainees and this would
be "Advanced Correctional Healthcare"
Attached is Exhibits KK to show the
fact defendants Kim Otter says
in grievance response that
"Advanced Correctional Healthcare
will not waive medical cost"

127. Plaintiff Jason Potter did not sign
any refuseal of medical care to
get the doctors ordered sonagram
done between March-May 2016
By not following a doctors order
the defendants Kim Otter, Sgt. J. Burgess
K. Nevilles, Jeff Weber, Dwight Diehl,
and corporal Jason Heffernon are
going against a doctors order
intentionally showing a deliberate
indifference to cause delay, pain,
and suffering. The defendant
Advanced Correctional Healthcare
would also show deliberate indifference
by not timely covering the cost of
all medical care.

128. In December of 2016 Plaintiff Potter wrote a grievance, and used multiple request forms informing defendant Kim Otter and jail officials how uncomfortable the mass cyst, hydrocele was getting that there is alot of pain from the swelling and fluid build up in the scrotum sac, that this pressure and swelling feels as if blood flow was getting cut off to the testicle. The nurse Kim Otter said she would mark it down as a follow up visit to see the doctor. This follow up did not get done.

129. In January 2017 when Plaintiff Potter filled out another request to see the doctor and surgeon and two weeks went by without seeing or hearing to be heard on the medical complaint, Mr. Potter verbally asked defendant Kim Otter why he has not seen the doctor. Kim Otter replied "the request form must have gotten lost somewhere

130. On January 27, 2017 when Mr. Potter seen the doctor, again Mr. Potter paid fees for a doctor visit, for the doctor to order another sonagram that should have been done the first time the doctor ordered it on March-May 2016. The fact is Mr. Potter got charged for numerous medical fees for the same exact medical complaint that should have been a free follow up visit. The doctor ordered the sonagram and said don't refuse the sonagram, but the truth is Mr. Potter never has signed any refuseal of medical care. Attached is Exhibits KK that shows messages in November 2017 about complaints on fees, and negligence. Attached is also Exhibit S, a declaration signed by pretrial detainees. Exhibit T is attached as an inmate bank transaction list. Mr. Potter will try and get all transactions upon discovery, for 2015-2018 transactions. Over $20 is taken for the cost of ~~medical~~ ~~the fee numerous~~

times for the exact same medical complaint to equal $30 or more. On Jan. 26 2017 got charged $20 more bringing a balance to negative⁻92.50. Exhibit A and I will show there is nothing in the policy saying the defendants Kim Otter, Advanced Correctional Healthcare, Jeff Weber, S. Burgess K. Nevilles, and Dwight Diehl have authority to take $20-30 dollars. every time Mr. Potter sees the doctor and nurse, without first a plea of guilt and a court order to satisfy such expense.

131. At all times Plaintiff Potter talked to the nurse and doctor, Mr. Potter informed them both how he has seen doctors and experts that do sonagrams ultrasounds, and how surgery is only cure, that medication cant fix the medical issues, that aspirin and Ibprofen will not cure it that only a surgeon can. Mr. Potter asked for defendants to get medical records from doctor

Kim Otter denied these request. Attached is Exhibit KK to show these refuseals and deny Mr. Potter medical records.

132. On Feb. 15, 2017 Mr. Jason Potter was transported to Cass Regional Medical Center for the doctors order sonagram. Evidence will show the fact on March 2016 the doctor ordered this sonagram done the first time. The defendants Kim Otter, Jeff Weber, Sgt. S. Burgess, K. Nevilles, Dwight Diehl and Advanced Correctional Healthcare delayed this doctors order for 11 months. Defendant Kim Otter, S. Burgess and Lt. K. Nevilles would try and lie and manipulate Mr. Potter into believe he has to have money on his account to get medical treatment, and to get medical records from other doctors. Mr. Potter might also show records that two different medical centers show different or inaccurate results when he is able to get discovery. Mr. Potter did not hear the test results on those images until November 2017. Relevant pages are attached as Exhibit KK.

133. Because the defendants Jeff Weber, Dwight Diehl, K. Nevilles, Sgt S. Burgess Cass County, Kim Otter and Advanced Correctional Healthcare unlawfully take money for the cost of medicine and medical attention without a plea of guilt and the court order, those defendants are not in compliance with policy and state statutes RSMO 221.120 and RSMO 221.070. This mismanagement for non compliance with federal, state, and local laws has left negative balances in Mr. Potters account. Mr. Potter was forced to choose between purchase legal material or to purchase medical attention. This harmed and caused injury to Mr. Potters "right to access to the courts". Mr. Potter was unable to pay for copys, stamps, paper, essential legal items, preventing Mr. Potter from fileing his civil rights complaint, act pro se, file motions, meet fileing deadlines, and prepare a defense for trial. Relevant pages are attached as Exhibit KK, Exhibit A Article 8 Sec. 2-3. See also Exhibit S, Exhibit T showes negative balances in inmate bank.

Mr. Potter wrote several complaints to the Advanced Correctional Healthcare by using a sealed envelope addressed to their office in Peoria Illinoise. This complaint explained issues of Plaintiff Potters money illegally being deducted from the inmate spend account for medical attention before a plea of guilty and the court order. It also explained their custom of not paying for the cost of medical attention or covering the cost of medical attention, when Mr. Potter was in custody and seen by Cass Regional Medical Center. Mr. Potter got no response back to these letters. Mr. Potter had his aunt Dawn Nelson call the office of Advanced Correctional Health and she was given an answering machine service after she spoke to a receptionest. Miss Dawn Nelson did not get any call backs from Advanced Correctional Health.

134.    Most jail officials will always deny
legal copys if your balance is
$0.00 or less. Those specific
jail staff but are not limited to are
Sergeant S. Burgess, Sgt. Shank,
Sgt. Monroe, Corporal Jason Heffernan
Deputy T. Monhollen, Deputy Rew,
and Deputy Thorton

135.    On Sunday January 29 2017 Mr. Potter
asked defendant Jason Heffernan
if he could make legal copies because
he is pro se and declared indigent
pro se by the judge, and the
fact policy dictates in Exhibit A
Article 5 Sec. 6(6) that if an inmate
is pro se he can request pro se
indigent supplies. Defendant Jason
Heffernan always denied legal copys
and pro se indigent supplies. Mr. Potter
asked the next shift that works nights
to make legal copies, this again
got denied because of the negative
balance. Most courts require that
when sending motions you serve one
on the prosecutor, to clerk, and judge
or anyone requireing service, and
its always good to keep a copy for

yourself for any hearings on motions
Mr. Potter has. This would cause
Mr. Potter to not be prepared
for his motion hearings and
pretrial hearing on 1/26/2017
Feb. 14, 2017. This prevented Mr. Potter
from the suppression hearing claims
being filed on 1/26/2017, and
2/14/2017. This has caused serious
delays and impairment on legal
claims in Mr. Potters civil rights
complaint, and both criminal cases.
Prevented Mr. Potter from fileing
legal papers. Prevented Mr. Potter
from appeall of the Writ of Prohibition
to the Missouri Supreme Court.
This is all because Mr. Potter was
forced to choose between two
constitutional rights, of purchase
essential legal material or to purchase
medical medical attention.
Attached are Exhibits C, D, R, V, O, KK, NN
to show the fact Mr. Potter is
self represented acting pro se,
is indigent, has fileing deadlines.

136. Defendants Kim Otter, S. Burgess, Jeff
Weber, K. Nevilles, Jason Heffernan,

and defendant Advanced Correctional
Healthcare were made aware of
Plaintiff Potters Chronic Health Care
Conditions upon being booked into
the Cass County jail because of the
series of questions, medical screening
procedures, and because of the
grievances and request forms filed.
Relevant pages of Mr. Potters
grievance and grievance response
are attached as Exhibit KK.
Mr. Potter also filled out numerous
request forms asking for blood
test. The defendant Kim Otter
always denied this and refused to
get medical records from the
M.D.O.C. Attached are the
denied request for blood test
lab results as Exhibit KK, and
Exhibit LL. Exhibit KK is also
evidence defendant Kim Otter
refused to get medical records
from Advanced Correctional Health.
Mr. Potter will also attach other grievances
and request forms that he filed on
the Turnkey Corrections Kiosk machines
when he is able to get that discovery

137. From July 8, 2015 through Feb. 5, 2018 Plaintiff Potter used numerous request forms requesting defendant Kim Otter and jail officials to get blood test done because of Chronic Health care conditions of hepatitis that require medical attention, care and check ups. The defendant Kim Otter, Advanced Correctional Healthcare, Lt. K. Nevilles, Jeff Weber, Sgt. S. Burgess, and corporal Jason Heffernan did not process these request forms and grievances, or they denied them or even threw them away, or loose them to delay treatment The defendants show a deliberate ~~indifference~~ indifference by ignoreing ~~serious~~ serious medical needs. Attached are Exhibits LL to show unanswered request medical forms that did not get processed and the medical records form that did not get processed that defendant Kim Otter had Mr. Potter sign. Exhibits KK LL show denied request and grievances. Mr. Potter will also attach Turnkey Corrections Kiosk grievances that he will obtain through discovery.

138. To deny Mr. Potter lab blood test
and Chronic Health Care treatment
as well as Medical Records
the defendants Advanced Correctional
Health, Kim Otter, Jeff Weber, K. Nevilles
Dwight Diehl, and Sgt. S. Burgess
are going against Mr. Potters other
health care providers orders who
say require check ups, treatment,
and DAA drugs. Further the defendants
would give Mr. Potter medication
such as ibprofen when his other
health care providers told him not
to take that medication because
its hard on the liver. Mr. Potter
has been seen by the Chronic Health
Care Clinic since 2007. See Exhibits KK, LL

139. To deny Mr. Potter the blood test,
lab work, and the Chronic Health
Care treatment is treating Mr. Potter
differently than an inmate by
the name of Edward
who he was not denied any
Chronic Health care treatment
while in the Cass County jail. That
inmate did not have to pay the

attention.

140. On July 8, 2015 on 267th Street location outside of Harrisonville Missouri. Deputy Stephen Valentich pulled over a vehicle that Plaintiff Jason Potter was occupying as a rear passenger of. From Mr. Potters information and belief the defendant Stephen Valentich had no probable cause to believe Mr. Potter had committed an offense, or was about to.

141. Plaintiff Jason Potter exited the rear of the vehicle and flee on foot into a field. Mr. Potter did not hear any verbal warnings or clear announcement that the defendant Stephen Valentich had a K9 that he will use and the probability that Mr. Potter will be bitten. This violated policy in chapter 48 set out in Section 4, attached as Exhibit X. Mr. Potter only heard sounds of a dog barking.

142 Plaintiff Jason Potter looked behind him after hearing the sounds of

fact Deputy Stephen Valentich was using his K9 champ #673K. Mr. Potter let the defendant Stephen Valentich know he was surrendering and Mr. Potter complied with orders by lay flat on his stomach, on the ground, face down. In less than one minute Mr. Potter felt K9 champs teeth penetrate the back of his left arm and triceps causing much physical pain and suffering.

143. Plaintiff Potter screamed and begged asking Deputy Stephen Valentich to please get his dog K9 champ off him. Deputy Stephen Valentich just kept watching as the K9 champ kept biteing and pulling Mr. Potters left arm, as if it were for his amusement. Everytime K9 champ would bite and pull, Deputy Valentich would Say "good boy". No matter how many times Mr. Potter would ask the defendant Stephen Valentich to please get his dog off, Deputy

Stephen Valentich would deliberatly ignore the request as if his motives were maliciously and sadistically to cause harm for his amusement.

144. While Mr. Potter was compliant and surrendered on the ground Deputy Valentich pulled K9 champ off him by using a leash, then immediately lead his K9 into the middle of Mr. Potters legs so that K9 champ would bite Mr. Potters private parts causing extreme pain and suffering. Deputy Stephen Valentich then pulled his K9 champ off Mr. Potter again by using a leash for approximately 5-10 seconds, and again while Mr. Potter was face down on the ground the defendant Deputy Stephen Valentich intentionally, sadistically, maliciously for his own amusement with control of the K9's leash lead his K9 back onto Mr. Potter so that his K9 would continue to bite Mr. Potter

shoulders, legs, lower back, left thigh, ass, and both legs to cause serious physical injury that has left scars that Mr. Potter will forever carry. Relevant photos, colored photos are attached as Exhibit U. See exhibit Y for medical results

145. Trained K9's are trained a bite and hold technique. With the multiple puncture wounds inflicted on Mr. Potters whole body this is clear evidence that the bite and hold technique was not used at all, but rather Deputy Stephen Valentich meant to cause harm rather than keep order. Attached as Exhibit U is the colored photos to show evidence of bites all over Mr. Potters body, that clearly the bite and hold technique was not used because Deputy Valentich would keep releasing his K9 over and over on Mr. Potter. Exhibit U is also the incident report. Mr. Potter will use video footage like patrol vehicles

and voice records ^audio of this incident
to clearly show evidence how
Mr. Jason Potter was allready flat
on his stomach face down on the
ground before ~~[crossed out]~~
the K9 champs first engagement.
Video footage will further show
the truth of how there was
no need for the police dog,
K9 Champ, when Mr. Potter was
on the ground and compliant.
That it was clearly excessive
force. Exhibit W is attached as
the controversy about misuse of
police dogs, and about bite and hold
technique. Exhibit U is evidence
the bite and hold technique was not
used, but rather the defendant
Stephen Valentich kept releasing
K9 champ to purposely bite Mr. Potter
while he was on the ground and
compliant.

146. The defendant Stephen Valentich,
Dwight Diehl, Sgt. S. Burgess, Kim
Otter, and K. Nevilles failed to
take photos of all Mr. Potters bite
~~Further there were bite~~

wounds on Mr. Potters private parts, thighs, lower back, and lower extremities, and butt cheeks, that the defendants failed to take photos of upon being booked into the Cass County jail. Attached is Exhibit Y as evidence medical staff seen multiple wounds to the lower extremities of Plaintiff Potters body. Exhibit Y is also the Cass Regional Medical Centers medical information and discharge papers relevant to the K9 Champ bite wounds. The photos do no justice because they were taken right after the incident at the hospital. No photos of all bite wounds were taken at the jail from Mr. Potters belief. Within 12-36 hours after the incident Mr. Potters whole left arm and both legs were black and purple.

147. After the defendant Stephen Valentich kept using excessive force by intentionally having K9 champ bite Mr. Potters body all over.

the fact there was no need for a police dog, there is no justification to keep using K9 Champs leash to over and over have the K9 bite Mr. Potter all over. It is sick and police brutality. Trained K9s are trained a bite and hold technique with a bite force between 1,200 and 2000 pounds per square inch, which is comparable to an automobile wheel running over a body part. Attached is Exhibit W to show evidence of bite and hold techniques that cause deep puncture wounds, severe crush injuries.

148. Defendants Stephen Valentich and K9 Champs illegal use of physical force causing Mr. Potter serious physical injury, pain and suffering for about 2 months. Mr. Jason Potter was unable to move his left arm for over 45 days after the incident and was very painfull for Mr. Potter to walk to medical because of the

legs and lower extremities. Mr. Potter also suffered psychological injury that he is ⊗ scared of dogs and had bad dreams often. Relevant pages are attached as Exhibits u, W, X, and Y

149. Plaintiff Jason Potter informed the medical nurses at the Cass Regional medical Center located in Harrisonville, Mo. 64701, about the fact how Deputy Stephen Valentich kept repeatedly using excessive force, and the fact Mr. Potter would ask Deputy Stephen Valentich to please stop to get the dog off. After the nurse heard this she replied "I cannot be hearing this" and she walked out. Mr. Potter was then given a different nurse, and Mr. Potter never seen that nurse again. The Cass Regional medical staff after that seemed to be trying to cover up the police brutality and acted as if the wounds were just miled, and acted as if they wanted Mr. Potter

out of their hands and care as
soon as possible.

150. The defendant Sgt. Justin Claibourn
and Deputy Thorton let Mr. Potter
Know it is the worst K9 attack
that they have seen by K9 Champ.
Plaintiff Potter informed both
officers how Deputy Valentich
kept releasing his K9 Champ on
him over and over and how every
time the dog bit Mr. Potter, that
Deputy Valentich would tell his
dog "Good Boy" as if rewarding
the dog every time it inflicted
wounds.

151. Justin Claibourn and Deputy Thorton
went on to say how the K9 champ
had surgery done and how the
K9 champ had surgery done, that
K9 champ got a new titanium
upper jaw and new titanium teeth
because the K9 champ chews on
cement or concrete. These new
set of titanium teeth are are set of
deadly weapons that cause serious

normal set of K9 teeth. The defendants
County of Cass, Stephen Valentich,
K. Nevilles, Dwight Diehl, Jeff Weber
Lt. Dave Rodgers are violating
Mr. Potters rights and the publics
by having a K9 with titanium teeth
to cause more physical damage than
needed for force. From Mr. Potters
information and belief K9 champ
is also called Robo dog. Using
a K9 Champ that has titanium
teeth and upper jaw the defendants
are violating Mr. Potters rights
being illegally seized under the
Fourth Amendment to the U.S.
Constitution, Mr. Potters due
process, and is equal to that of
cruel and unusual punishment.

152. Deputy Stephen Valentich writes up
false incident reports and says
the K9 Champ pursued Mr. Potter
subsequently taking him to the ground.
Any video or media discovery will
show Mr. Potter was flat on his
Stomach face down before the
K9s first engagement. The Incident
report is attached as Exhibit U.

153. Plaintiff Jason Potter will attach a letter and declarations from Travis Linder who was a victim of the same police brutality by the defendant Stephen Valentich.

154. Plaintiff Jason Potter plans on using the testimony, depositions, declarations of four other civilians and one innocent civilian that Deputy Stephen Valentich used excessive force on. From Mr. Potters information and belief an innocent civilian was recording police misconduct of the defendant Stephen Valentich conduct. When Deputy Valentich learned of this public recording him he released his K9 champ on her and K9 champ bit her. Deputy Valentich took her phone and recording device. Mr. Potter may also use any other incidents relevant to this matter.

155. Mr. Potter correctly used the grievance form and grievance procedure to file a grievance about Deputy Stephen Valentich

only got one answer back to one of the grievances with it being denied for being an invalid grievance, Mr. Potter wrote numerous other grievances by following the correct rules to file a grievance procedure, all grievances were ignored without process.

156. Mr. Potter realleges and incorporates by reference as if fully set forth herein paragraphs 109, and 110 and additionally states after Sgt. Monroe spoke to the Lt. K. Nevilles, and the fact Mr. Potter used the chain of command asking Sgt. Monroe to please help him have access to personally speak to the Division commander Lt. K. Nevilles, Mr. Potter spoke with the defendant K. Nevilles and informed him he has correctly used the sealed envelope grievances and they always are ignored without process. Mr. Potter spoke about all issues in this complaint, the Lt. Nevilles said he would ask the defendants to treat Mr. Potter a certain way. Mr. Potter is unaware if the defendants respectfully

anything because Sgt. S. Burgess
continued to obstruct the grievance
procedure. All other jail officials
told Mr. Potter they could not
answer his grievances, that the
shift Sgt. S. Burgess works has
to answer them. Jail officials
also told Mr. Potter they can not make
him a trustee because Sgt. Burgess
and corporal Heffernan would have
a cow.

157. Because grievances are ignored, Mr.
Potter gave deputy Funk a sealed
envelope to Jeff Weber the
sheriff that was 9 pages long.
on, Feb. 20, 2017 Deputy Funk logged
this into mail records. See paragraph 44
of this civil rights complaint as a
cross reference. The defendants
Jeff Weber, K. Nevilles, Sgt. S. Burgess
were made aware of all issues in
this complaint, failed to correct
or remedy all wrongs, obstruct
a grievace procedure by not providing
written responses. K. Nevilles and
Jeff weber created a custom of

occured and allowed the continuance
of the custom. From Mr. Potters
information and belief the Lt. K. Nevilles
is to intimidated or scared to
give orders to Sgt. S. Burgess
to fix his wrongs, and correct their
misconducts. The defendant
Jeff Weber, and K. Nevilles show
deliberate indifference to the rights
of Mr. Potter and privileges by
failing to act on information
indiacting that unconstitutional acts
were occuring. Defendant K. Nevilles
participated directly on the illegal
holding of Mr. Potters mail for
weeks at a time without any due
process. Attached is Exhibit Q a
declaration signed by numerous pretrial
detainees who witness Mr. Potter
correctly file grievances.

158. Mr. Potter filed numerous grievances
about grievances not given process
and the fact when grievances are
answered those grievances get
answered by the jail official who
the grievance is on, amounting to
a conflict of interest, Mr. Potter

filed numerous grievances using the
Turnkey Corrections Kiosk machine about
the issues with the obstruction
of a grievance procedure, Mr. Potter
was told "why dont you just file
the lawsuit you keep saying your
going to file". Mr. Potter was
also threatened with punishment
or a conduct violation for abuse
of the grievance system for
excessive grievances.

159. On Jan. 9, 2017 Plaintiff Potter
received medical bills from the
Cass Regional Medical Center,
about the K9 bite wounds inflicted
by Stephen Valentich and K9 Champ.
Mr. Potter has received those same
bills in 2018 as well. Mr. Potter
wrote a complaint to both Cass County
Sheriffs jail officials and to the
Cass Regional Medical Center and
explained the fact how the
defendants Advanced Correctional
Health, Jeff Weber, Dwight Diehl,
and Cass County should have to
pay the cost of the medical bill

custody, handcuffed, and seized by Sheriffs deputys. Per policy and statutes RSMO 221.120 and RSMO 221.070 it takes a court order to satisfy such expenses as well as a finding of guilt. Attached is Exhibit I Attached is policy as Exhibit A, Article 8 Sec 2-3. The medical bills are attached as Exhibit Y. From Mr. Potters information and belief he did not sign a consent to medical care. Mr. Potter refused to sign also because Cass Regional was not providing adequate medical care by not listning and takeing all complaints. Cass Regional Medical Center did not treat bite wounds on Mr. Potters lower extremities, buttox, and private areas. Attached as Exhibit Y was the refuse to sign yet Mr. Potter is charged medical bills that effect his credit score. This injury to Mr. Potters credit score affects Mr. Potter day to day living from being financed on necessities.

160.    Mr. Potter realleges and incorporates
by reference as if fully stated
here in paragraphs 89, 90, 91, and
92 and additionally states Mr. Potter
correctly filed numerous request forms
requesting to be a working inmate
commonly called a "trustee work
position". Mr. Potter has correctly
filed both request forms and grievances
throughout the duration of his
incarceration from August 2015
through January 2018. Relevant
pages of Mr. Potter's letter of incarceration
are attached as Exhibit M that will
show Mr. Potter was incarcerated
in the Cass County jail for long
periods of time a total of 816 days
and the defendants Jeff Weber,
Dwight Diehl, K. Nevilles, S. Burgess,
Stacey Gunn, J. Heffernan, and
T. Monhollen always denied Mr. Potter
a trustee position because of the
Felony assault 2nd degree case he
was charged with. Denying
Mr. Jason Potter a trustee job because
of his charge of 2nd degree Domestic
assault would treat Plaintiff Potter
differently than other inmates

by the name of Timothy Kidd #535629
and Bradly Beach
who Timothy Kidd was charged
and convicted of 1st degree Domestic
Assault, and previous convictions
of 2nd degree Domestic assault.
Bradly Beach also had prior
convictions for Domestic Assault
in 2nd degree, and possible city
ticket for assault. Both Timothy
Kidd and Bradly Beach held the
working inmate trustee position.
And the fact is Timothy Kidd was
charged with more violent severe
Domestic Assault charges, and he
was convicted. This is evidence
Mr. Potter was not treated equal
as a couple of similary situated
inmates, that Mr. Potter was
treated different, was not given
equal privileges, rights, and
opportunity under the law. Attached
is Exhibit J a declaration signed by
numerous pretrial detainees who
were also denied the trustee
position. See also attached is
Exhibit A Article 5 sec. 7 of policy and
rules those shows both Timothy Kidd

and Bradly Beach does not meet the criteria to qualify for a trustee position. Exhibit J also shows the denied responses from the defendants.

161. Denying Mr. Potter a trustee position would also deny Mr. Potter other privileges and preferential treatment that working inmate trustees automaticaly aquire. Those privileges include but not limited to are:

a.) trustees get to go outside and get fresh air

b.) trustees get to smoke cigarettes

c.) trustees get to eat extra food and cakes

d.) trustees get to make free phone calls on the booking telephones often

e.) trustees are not locked down in these cells 17-23 hours a day like Mr. Potter was.

f.) trustees day room while other offenders are locked down

162. Plaintiff Potter wrote numerous grievances on denial of the working inmate trustee jobs. The grievances always explained how a similarly situated inmate by the name of Tim Kidd was never denied a trustee position when he has violent felony convictions of Domestic Assault 1st degree, but yet Mr. Potter and numerous other pretrial detainees are denied because of assaults on there record. One of the grievances were reviewed by the defendant Deputy T. Monhollen and he said over the intercome loudly infront of other inmates "Stop writing grievances on this petty bullshit because Noone cares. that officers dont have to treat us equal to look at the child molesters they are in a different pod." Deputy T. Monhollen, Sgt. Burgess, K. Nevilles Stacey Gunn, J. Heffernan, and Jeff Weber denied all request forms and grievances with the response that Mr. Potter is charged with 2nd degree Domestic Assault, so

he received no response. Exhibit J a declaration by numerous inmates.

163. The fact is Mr. Potter was confined in the Cass County jail as a pretrial detainee for 816 days and those jail conditions amounted to punishment undue suffering, and was not healthy for Plaintiff Potters physical and mental condition. Mr. Potter was treated differently than inmate Timothy Kidd who did not qualify for a trustee position. Mr. Potter did not get to go outside at all for fresh air. Mr. Potter never got no outdoor recreation Mr. Potter got less food, less trays, Mr. Potter was locked down in a cell 17-23 hours a day, No TV, No newspapers, Mr. Potter was deprived of outdoor exercise, there was not an indoor gym, there was no adequate space for exercise, and if there was a gym than Mr. Potter and the pretrial detainees were denied access. This all added up to create an overall effect that is unconstitutional and was unhealthy for Mr. Potters physical and mental health. Sgt. S. Burgess told Deputy Skeens to not be nice to the inmates because pretrial inmates

are suppose to be punished. Attached is Exhibit PP

164. During the month of February 2017 while Sgt. Jennifer Wise and Deputy Hendrix were makeing legal copys for Plaintiff Potter, Mr. Potters legal copys got jammed in the copyer. Deputy Hendrix noticed Sgt. Wise name on Mr. Potters legal work because of the fact the legal copys being made were copys of this Complaint Under The Civil Rights Act, 42 USC 1983.

165. As soon as Deputy Hendrix noticed Sgt. Wise name on Mr. Potter legal copys, Deputy Hendrix told Sgt. Wise "look at this". Because of both the jam in the copyer and Sgt. Wise and Deputy Hendrix reading Mr. Potters legal copys of this Complaint under The Civil Rights Act and the fact Sgt Jennifer Wise seen her name in the complaint, Mr. Potter was ~~stopped~~ stoped and prevented from makeing any more copys by all Cass County jail officials. This prevented Mr. Potter from fileing timely his Complaint Under The Civil Rights Act of 42 USC. 1983.

166    In support of Plaintiff Potters claims
that he has been irreparably injuried
because of the inadequacy of a
law library, inadequacy of legal
assistance, denial of pro se
indigent supplies, and the fact
Deputy Stacy Gunn would take
Mr. Potters legal supplies, law
books, and then punish him
~~while~~ for having these legal
supplies, Mr. Potter has
attached Exhibit OO, the
Docket Entries for Mr. Potters
case 15CA-CR00638-01.


167    Exhibit OO shows evidence
Mr. Potters Suppression Hearing was
removed from the docket because
of the fact the defendants
prevented Mr. Potter from
prepareing a defense for all
motion hearings, pretrial, and
a jury trial. Numerous unwanted
continuances were forced on
Mr. Potter do to all inadequacys
of legal assistance causing

for very long periods of time
in a state of punishment and
harrasment. These long periods
of confinement would cause
Plaintiffs ple of guilt to be
induced by fraud, apprehension,
duress, physical and mental
coercion. Attached is Exhibit PP
a declaration signed by pretrial
detainees. Attached as Exhibit M
is Mr. Potters letter of incarceration
to show Mr. Potter was confined
for long periods of time. Under
these unhealthy stressful conditions
Mr. Potters physical, mental,
and medical condition was
getting worse and it would
mentally and physically deplete
anyone incarcerated for long
periods of time under these
conditions.

168.    Attached as Exhibit OO are
the docket entries as evidence
the court denied Mr. Potter
standby counsel while he was
representing himself pro se.

habeas corpus forms by the
jail officials and the court
preventing him from fileing a
habeas petition. Mr. Potter was
denied all forms that an
adequate law library should
have.

169    On top of all these overly
restrictive conditions the
defendants tried all forms
of ways to block the
preparation and filing of
this lawsuit all in an attempt
to stop the public and courts
from learning about prisoner
issues and complaints.

# EXHAUSTION OF LEGAL REMEDIES

170.   Plaintiff Jason Potter has used the inmate grievance procedure available at the Cass County Jail to try and solve the problems. Plaintiff Potter has took careful consideration to follow the rules and the chain of command to correctly file grievances In support of these factual allegations attached is Exhibit Q all 3 pages of a declaration signed by the pretrial detainees who have witnessed Plaintiff Potter use administrative remedies on all issues and legal claims stated in this complaint.

171.   Plaintiff Potter has further tried using the Cass County Courts by fileing motions, letters, and verbal complaints in open court to try and solve the problems. Attached are numerous letters to the court as Exhibit HH, see front and back pages. Plaintiff Potter was told by Judge Stacey Lett to use the grievance system available at the jail.

172. The jail Sergeant and Lieutenant never give a reply back to these grievances or do not provide process to all grievances. Plaintiff Potter has requested numerous times for written responses back to these grievances but they all get denied or ignored completely.

173. Deputy Stacy Gunn told Plaintiff Potter that her corporal and Sgt. S. Burgess said it will be all bad for Mr. Potter if he keeps writing grievances, or pursue the issues.

174. Deputy T. Monhollen has told Mr. Potter to stop writing these petty bullshit grievances because nobody cares

175. Plaintiff Potter used the Turnkey Correctional Kiosk machine to file several grievances if not many, when they were finally installed in November 2017. Mr. Potter wrote a grievance about not getting answers or replys back to handwritten grievances

mr. Potter got a response back
to go ahead and file the lawsuit
you said you were going to file.

176. On the Kiosk machine Plaintiff
Potter got a response back to
his request form and grievance
that if he keeps writing grievances
that he will get wrote up
for abuse of the grievance
system, as if he will be punished.

177. Very rarely do the grievances get
answers back to them and when
they do get answers, they are
verbal over the loud speaker,
not in private, and infront of
other inmates, those answers
are always denied. It was not
until November 2017 that Plaintiff
got answers to grievances because
they were done by Kiosk machines
that leave digital imprints.

178. Often Plaintiff Potter noticed the
grievances go back infront of the

amounting to a conflict of interest, bias, and prejudice in the grievance procedure available at the Cass County jail.

179. On Feb. 3, 2017 Plaintiff Potter made verbal complaints to Sgt. Monroe while Deputy Brooks and Deputy Thorton were present, at 2:40 AM. The complaints were all written down by Sgt. Monroe and the fact how inmates dont get process and answers back to their grievances was raised and brought to there attention.

180. On Feb. 20, 2017 Plaintiff Potter used a stamped envelope addressed to the Sheriff Jeff Weber and submitted a 9 page grievance complaint, this complaint explained how grievances dont get processed as well as all other complaints listed in this Civil Rights Complaint. Mr. Potter never received any responses to this 9 page grievance. Deputy Funk said she would log this letter into

181    Plaintiff Potter used a form called
"Request for Records" to get copys
of all grievances, any possible
written responses, mail loggings,
inmate activy list, these request
were ignored without process
or even a response.

182.    On Jan. 11th and January 12, 2017
Plaintiff Potter submitted a
request for discovery pursuant to
Supreme Court Rule 25.04 requesting
copies of all grievances, responses,
request forms, law library log, and mail
log. Mr. Potter submitted this discovery
motion to the Cass County Circuit
Court and it got denied. In support
of these factual allegations attached
are Exhibits **BB** the States response
to this discovery motion See paragraphs
9, 10, and 11.

183.    On January 17, 2017 Plaintiff Potter
used a subpoena for the jail
administration to produce copys of
all grievances, mail log, and
inmate activity list. On Jan. 26 2017

Still

acting pro se the Prosecuting Attorney
objected to these subpoena request

184. Mr. Potter seen only one written
response to a grievance response
on January 4, 2017 by the nurse
Kim Otter. When Mr. Potter asked
defendant Kim Otter if he could
keep a copy of the grievance
response for future use and
evidence the defendant denied this
request and said Plaintiff Potter would
have to subpoena these grievance
records. Attached is Exhibit KK
a copy of that grievance that only
Mr. Potters appeal attorney was able
to aquire because when Mr. Potter
tryed to subpoena medical grievances
they were denied.

185. Mr. Potters Appellate Attorney
Annette M. Wallace was able to
acquire only partial grievance
complaint and jail records on
November 2018. See Attachments
in Exhibits B, II, JJ, KK, LL, MM,
NN.

186. Plaintiff Potter and his attorney Annette Wallace have been unsuccessful at getting the jail administration and officers to produce all request forms and grievances related to this cause. There are numerous request forms and grievances on the Turnkey Corrections Kiosk machine that Cass County jail officials could easily print out that leave a digital imprint. These negligent actions hinder Plaintiff Potter from produceing evidence timely for his Civil Rights Complaint.

187 Because jail officials do not provide handwritten responses back to grievances ignore grievances, and fail to turn over Kiosk printouts of grievances Plaintiff Potter is unable to attach all grievances as evidence for this complaint. This would show Mr. Potter used the grievance procedure with diligence. Plaintiff Potter also waited for responses way past the time limitations or even months to try

Plaintiff Potter is unable to attach all grievances through No Fault of his own. Plaintiff Potter plans to use the United States District Court and proper discovery motions to obtain all evidence and grievances. to meet all the Exhaustion requirements.

# LEGAL CLAIMS

188.    Plaintiff Jason Potter reallege and
incorporate by reference paragraphs
1-188

189.    Defendants Jeff Weber, Dwight Diehl,
Justin Claibourn, K. Nevilles, S. Burgess
and County of Cass failure to fund
an adequate law library and fund
meaningfull access to the courts
in an attempt to save the County
of Cass and Sheriffs Office money
is violating Plaintiff Potters rights
to proceed pro se and right of
access to the courts both guaranteed
by the United States Constitution. This
has caused injury to Plaintiff Potters
criminal case and Civil Rights complaint.
This has caused injury to Plaintiff
Potters First, Fifth, Sixth, and
Fourteenth Amendments to the
United States Constitution.

190.    The defendants Jeff Weber, Dwight Diehl,
Justin Claibourn, K. Nevilles, S. Burgess
Stacy Gunn, Jason Hefferman, and
T. Monhollen denial of access

to an adequate law library without
providing alternative means of legal
research, legal material, legal
printer, forms, pretrial motion forms,
law books, self help litigation books,
a Missouri Constitution, copys,
and the judges ordered pro se indigent
supplies, as well as policys additional
pro se indigent supplies has
violated Plaintiff Potters rights
to proceed pro se and right of
access to the courts. This has
caused injury to Plaintiff Potters
criminal case and civil rights
complaint injurying Plaintiff Potters
First, Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution

191. Defendants Jeff Weber, Dwight Diehl,
Justin Claibourn, K. Nevilles, Jennifer Wise
S. Burgess, Stacy Gunn, Jason Heffernan
and T. Monhollen violated Plaintiff
Potters Fourteenth Amendment right
to due process by depriving him
of his vested liberty interest of
the additional pro se indigent
supplies, legal material, forms,

without providing alternative means
to prepare a defense for trial
when the defendants are aware
Mr. Potter has no standby
counsel because the court denied
standby counsel has violated
Plaintiff Potters rights to proceed
prose and right to access to
the courts under the First, Fifth,
Sixth, and Fourteenth Amendments
to the United States Constitution.
This has caused injury to Plaintiff
Potters rights under the Equal
Protection Clause of the
Fourteenth Amendment to the United
States Constitution. Mr. Potters
defense for hearings, pretrial, and
to be able to prepare a defense for
a jury trial were not equally
available as that of a lawyer
or a prosecutors causing a
huge disadvantage.

192. Defendants Jeff Weber, Dwight Diehl,
County of Cass, Justin Claibourn,
K. Nevilles, S. Burgess, Stacy Gunn,
Jason Heffernan, and T. Monhollen denial
of access to an adequate law library

without providing alternative means of
legal research, legal material,
additional pro se indigent supplies,
forms, Missouri Constitution,
Selfhelp Litigation lawbooks, copyer
of any other alternative means
essential to prepare a defense
for a jury trial, writs, and scheduled
suppression hearings has caused
unwanted delays, unwanted
continuances, preventing Mr. Potter
from having the Feb. 17, 2017
scheduled suppression hearing, and
numerous jury trials. This has
violated Plaintiff Potters Due Process
under the Fifth and Fourteenth
Amendments to the United States
Constitution and has caused
injury to Plaintiff Potters rights
to a fair, fast and speedy trial
guaranteed by the Sixth Amendment
and Fourteenth Amendment to the
United States Constitution.

193. Defendants K. Nevilles and S. Burgess
show of deliberate indifference
by preventing Plaintiff Potter
from preparing a defense for

scheduled suppression hearings,
motion hearings, pretrial conferences,
and scheduled jury trials when
both defendants held the Discovery
Videos that were on a CD that
were privileged mail because
they were apart of Mr. Potters Discovery
evidence that came from the Cass
County Prosecution Office and the
defendants K. Nevilles and S. Burgess
deliberate indifference failure to
let Plaintiff Potter watch his Discovery
videos after he requested so numerous
times, this has violated Plaintiff
Potters rights to proceed pro se
and right of access to the courts.
This caused injury to Mr. Potters two
criminal cases 15CA-CR00638-01 and
16CA-CR00007 by preventing Mr. Potter
from prepareing a defense for a
suppression hearing and jury trials.
This prevented Mr. Potter from having
the Feb. 17, 2017 scheduled suppression
hearing and jury trials, violating
Mr. Potters Fifth, Sixth, and Fourteenth
Amendments to the United States
Constitution.

194.   Defendant Stacy Gunn use of threats
that she will place Mr. Potter into
disciplinary segregation so that he
cannot use the law library and the fact
Plaintiff Potter was placed in disciplinary
segregation on the months of March
7th 2016 and November 2016 and denied
access to the law library without
providing alternative means of legal
research and legal material has violated
Plaintiff Potters right to act pro se, and
right to access to the courts.
This caused injury and delay to Plaintiff
Potters criminal and Civil Rights complaints
as well as impairment on fileing motions.
This has caused injury to Plaintiff Potters
First, Fifth, Sixth, and Fourteenth
Amendments to the United States
Constitution.

195.   On March 7, 2016 the defendants Stacy Gunn
Jason Heffernan, T. Monhollen, and
S. Burgess violated Plaintiff Potters
rights to due process by placeing
Mr. Potter in disciplinary segregation
without first being accord a due
process hearing, and present

if Plaintiff Potter violated any rule. This violated Plaintiff Potters Fifth and Fourteenth Amendments to the United States Constitution.

196. On March 7, 2016 the defendants Stacy Gunn, Jason Heffernan, T. Monhollen and S. Burgess deprived Plaintiff Potter of his personal property, legal writing material, and postage stamps without an inventory report and without a due process hearing violated Mr. Potters due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. This deprivation of Mr. Potters property caused injury to Plaintiff Potters rights to access to the courts causing injury to Plaintiffs First, Fifth, and Fourteenth Amendments to the United States Constitution.

197. Defendants Jeff Weber, Dwight Diehl, K. Nevilles, S. Burgess, and County of Cass failure to fund a way for Plaintiff Potter to make private phone calls to his lawyer so that

he can try to get an attorney and then
to meet with that attorney violates
Plaintiff Potters right to counsel in
violation of Plaintiff Potters rights
under the Sixth Amendment to the
United States Constitution

198. Defendants Jeff Weber, Dwight Diehl,
K. Nevilles, S. Burgess, Jason Heffernan
Stacy Gunn and T. Monhollen denial to
let Plaintiff Potter make private
unmonitored legal calls after he correctly
used a request form requesting to place
an unmonitored legal call and the
defendants are aware Plaintiff Potter is
a pretrial detainee under investigation
of a crime, the defendants are
acting in a negligent manner with
deliberate indifference violating
Plaintiff Potters right to counsel,
right of access to the courts, this
also breaks rules of the attorney-client
privilege in violation of Plaintiff Potters
rights under the First, Fifth, Sixth,
and Fourteenth Amendments to the
United States Constitution.

199. By not providing Plaintiff Potter a private room to make legal telephone calls and the denial to let Plaintiff Potter make unmonitored legal calls to his attorney when Missouri Revised Statutes 600.048, 544.170, and policy Article 6 sec. 2 define and create a duty of every person in charge of a sheriffs office to make a room were a person held in custody can talk privately with his lawyer, the defendants Jeff Weber, Dwight Diehl, K. Nevilles, S. Burgess, Jason Heffernan, Stacy Gunn, Jennifer Wise, and T. Monhollen ~~breaded~~ breached a duty to let Plaintiff Potter call his attorney and talk privately with his attorney ~~in violation~~ in violation of Missouri Revised Statutes 600.048 and 544.170.

200. By not providing a private room so Plaintiff Potter could make private phone calls for the purpose of preparing his defense for a jury trial when Honorable Judge Stacy Lett order on January 26, 2017 to a telephone for the purpose of preparing a defense were Plaintiff Potter was self represented

the defendants Jeff Weber, K. Nevilles
S. Burgess, Jason Heffernan,
Stacy Gunn, and T. Monhollen violated
Plaintiff Potters rights to proceed
pro se in violation of Plaintiff
Potters rights under the Sixth
Amendment to the United States
Constitution. This is causing
injury to Plaintiff Potters Due Process
and access to the courts, injuring
his First, Fifth, Sixth, and Fourteenth
Amendments to the United States
Constitution.

201. Defendants Jeff Weber, Dwight Diehl,
K. Nevilles, S. Burgess, Jason Heffernan
Stacy Gunn, Jennifer Wise, and
T. Monhollen denial to let Plaintiff
Potter make private unmonitored
legal calls after he made it known
to all jail officials he does not want
to waive the attorney-client priviledge
the defendants are violating
Plaintiff Potters right to be free
from unwanted monitoring of
confidentiality in violation of
Plaintiff Potters rights under the Fourth

202. Defendants Jeff Weber, K. Nevilles, S. Burgess, Jason Heffernan, Stacy Gunn, Jennifer Wise, and T. Monhollen denial to let Plaintiff Potter make private unmonitored legal calls from May 11, 2017 to July 24, 2017 so that he could try and get an attorney because Plaintiff Potter was without counsel and under the investigation of a crime as well as a probation violation for violating the laws, the defendants are violating Plaintiff Potters right to counsel under the Sixth Amendments to the United States Constitution. These illegal actions caused delay and injury to Plaintiff Potters right of access to the courts, Due process, fast and speedy trial, and right against self incrimination in violation of Plaintiff Potters First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

203. The defendants Jeff Weber, Dwight Diehl K. Nevilles, S. Burgess, Stacy Gunn, Jason Heffernan, and T. Monhollen denial to let Plaintiff Potter make private unmonitored legal calls when the defendants forced Mr. Potter to use the recorded collect call phones in the day room that is around other inmates in a public setting that are subject to recording and monitoring breaks the rules of the attorney client privilege, the defendants violated Plaintiff Potters right to due process under the Fourteenth Amendment to the United States Constitution by depriving him of his vested liberty interest in personal privacy and right to confidentality of the contents of legal conversation, as well as unrestricted and confidential access to the courts promised in the inmate rule handbook This illegal action of terminating Mr. Potters legal calls is causing injury to Mr. Potters rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution.

204    On November 5, 2016 when the defendants
Stacy Gunn and Jason Hefferman unlawfully
searched and seized items in Plaintiff
Potters cell living area without any
probable cause to believe there was
contraband and the fact no illegal
contraband was found or inventoried
and while defendants Stacy Gunn
and Jason Hefferman left Mr. Potters
living area or cell in a dissary and
chaos while not inventoring
personal property seized and given
away to other inmate trustee,
such as clothes, lawbooks, and two
daily breads that had personal address
and phone numbers on them, the
defendants Stacy Gunn and Jason
Hefferman are violating Mr. Potters
right to be secure in his persons,
houses, papers and effects against
unreasonable searches and seizures
in violation of Mr. Potters rights
under the Fourth Amendment to the
United States Constitution. This ~~injury~~
~~~~ deprivation of personal property
has caused injury to Mr. Potters
due process, and access to the courts

~~~~ Fifth ~~~~ and
Fourteenth Amendments to the U.S. Constitution

205. On November 5 2016 when the
defendants Stacy Gunn and Jason Heffernan
seized and threw away Plaintiff
Potters two legal books called
"The Bill of Rights and the Constitutional
Amendments" and "Cohen and Olson's
Legal Research in a Nutshell", and
the fact these two legal law books
were deprived from Plaintiff Potter
without a due process hearing set
out in policy Article 6 sec. 2, this
was in violation of Mr. Potters
rights of due process under the
Fifth and Fourteenth Amendments to
the United States Constitution. These
illegal actions caused injury to Plaintiff
Potters right of access to the courts
under the First, Fifth, and Fourteenth
Amendments to the United States
Constitution.

206. On November 5, 2016 when defendant
Stacy Gunn threw away two "Daily Bread"
religious books that were approved through
Mr. Potters incoming mail by other jail
officials, this deprivation of personal
property violated Plaintiff Potters
due process under the Fifth and

Fourteenth Amendments to the United States Constitution. These illegal actions caused injury to Plaintiff Potters rights under the Free Exercise Clause of the First Amendment to the United States Constitution.

207. By not following incoming mail procedures and not notifing Plaintiff Potter when his Daily Bread religious booklets are rejected through incoming mail the defendant Stacy Gunn is violating Plaintiff Potters due process of the right to be notified. These illegal actions are causeing injury to Plaintiff Potters rights under the Free Exercise Clause of the First Amendment to the United States Constitution.

208. Defendant K. Nevilles, S. Burgess, Stacy Gunn Jason Heffernan, and T. Monhollen show of preferential treatment to inmate Timothy Kidd #535629 for turning a Declaration into jail officials that were to go to the A.C.L.U. Kansas City Star, and Fox 4 Problem Solvers and the fact this Declaration was

intercepted and prevented from going
out this caused injury to Plaintiff
Potters Free Expression of Political
Beliefs of the First Amendment to the
United States Constitution

209. Defendants K. Nevilles, S. Burgess,
Jason Heffernan, Stacy Gunn, and
T. Monhollen illegal misconduct to
show inmate Timothy Kidd M.D.O.C
number 535629 preferential treatment
for privileges and favors he does not
qualify for such as the work program,
and benefits of the work program,
with the fact Timothy Kidd does not
qualify for because of his violent
criminal record, the defendants are
treating Mr. Potter differently by
denying him the trustee inmate
work program, in violation of
Plaintiff Potters rights under the
Equal Protection Clause of the
Fourteenth Amendment to the
United States Constitution.

210. Defendants K. Nevilles, S. Burgess, Jason Heffernan, Stacy Gunn, and T. monhollen denial to let Plaintiff Potter work a trustee position because of his charge of 2nd degree Domestic Assault and then to let other inmates with the same charge or more severe violent charges work a trustee position, the defendants are disciminating and retaliating against Plaintiff Potter for seeking redress of his grievances, complaints, and for trying to use the courts and political pressure. This is in violation of Plaintiff Potters right to be free from discrimination under the Fourteenth Amendment to the United States Constitution. The defendants are retaliating against Plaintiff Potter unlawfully in violation of Plaintiff Potters rights under the First Amendment to the United States Constitution causing injury to his First Amendment rights.

211. Defendant K. Nevilles and S. Burgess order to put a hold on Plaintiff Potters mail on months from Oct. 2016 to December 2016 for exercise of his right to seek redress for his complaints and grievances by use of the courts, ACLU involvement, and political pressure and the illegal action to put a hold on Plaintiff Potters mail without any due process or notification when mail is rejected, the defendants K. Nevilles and S. Burgess are in violation of Plaintiff Potters First Amendment rights to send and receive letters and free expression of political beliefs. The defendants are also violating Plaintiff Potters due process, the right to be notified when mail is rejected in violation of Mr. Potters rights under the Fourteenth Amendment to the United States Constitution This is causing injury to Plaintiff Potters right of access to the courts under the First, Fifth, and Fourteenth Amendments to the United States Constitution

212. Defendants K. Nevilles, S. Burgess, Jason Heffernan, Stacy Gunn, and T. Monhollen illegal misconduct and continueation of not following procedures to censor mail, not notifing both Plaintiff Potter and the sender when they reject mail, and not giving both Plaintiff Potter and the sender the chance to challenge the censorship, the defendants are violating Plaintiff Potters First, Fifth, and Fourteenth Amendments to the United States Constitution.

213. Defendants K. Nevilles, S. Burgess, Jason Heffernan, Stacy Gunn, and T. Monhollen illegal misconduct of not following special rules of procedure when they censored Plaintiff Potters privileged mail from the Citizens Commission on Human Rights, The Soverign Health Care, Center for Constitutional Rights and the National Lawyers Guild, the defendants are violating Mr. Potters rights of access to the Courts, as well as the attorney-client privilege, in violation of Plaintiff Potters rights under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution

214. Defendant Stacy Gunn continuation of opening up Plaintiff Potters legal mail without him being present, and after she was requested multiple times to open up legal mail in his presence, these illegal action are violating Plaintiff Potters right to have unrestricted and confidential access to the courts as well as the attorney-client privilege in violation of Plaintiff Potters First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

215. By deducting money from Plaintiff Potters inmate bank account for the cost of medical attention and medicine without first Plaintiff Potters plea of guilt or finding of guilt and then a court order having criminal jurisdiction to satisify such expenses, the defendants County of Cass, Jeff Weber, Dwight Diehl, K. Nevilles, S. Burgess, Kim Otter, and Advanced Correctional Health are illegally deducting money, amounting to wrongful appropriation of money, and mismanagement for

and local laws in violation of
RSMO 221.070 and RSMO. 221.120

216. By illegally deducting money from
Plaintiff Potters inmate bank account
leaving a negative balance for the cost
of medical attention and medicine without
first Plaintiff Potters plea of guilt and
then the court order having criminal
jurisdiction to satisify such expenses
that is in accordance with RSMO 221.120
and RSMO 221.070, the defendants
County of Cass, Jeff Weber, Dwight Diehl,
K. Nevilles, S. Burgess, Kim Otter, and
Advanced Correctional Healthcare
are violating Plaintiff Potters due process
under the Fifth and Fourteenth Amendments
to the United States Constitution. These
illegal actions are causing actual injury
to Plaintiff Potters right of access to the
courts and the right to proceed pro se.
Plaintiff Potter is forced to choose
between two Constitutional rights of
purchasing medical attention or to
purchase legal material, copys, stamps
to file legal documents violating
Plaintiff Potters First, Fifth, Sixth, and
Fourteenth Amendments to the
United States Constitution.

217    By not providing adequate medical
       care and for deliberately causing
       unwanted delay to provide medical
       care the defendants Jeff Weber,
       Dwight Diehl, Advanced Correctional
       Health, Kim Otter, S. Burgess, and
       K. Nevilles are showing a deliberate
       indifference to Plaintiff Potters
       serious medical needs and Chronic
       Healthcare condition violating Plaintiff
       Potters rights under the Due Process
       Clause of the Fifth and Fourteenth
       Amendments to the United States
       Constitution.

218.   Defendants Kim Otter, Jeff Weber, and
       K. Nevilles, refuseal and denial
       to get medical records of Plaintiff
       Potters Chronic Health Care condition
       from the Missouri Dept. of Corrections
       the defendants are ignoreing and
       showing deliberate indifferance to
       Plaintiff Potters serious medical needs
       that require check ups and follow ups
       violating Plaintiff Potters rights
       under the Due Process Clause of the
       Fifth and Fourteenth Amendments to the

219.    Defendant Kim Otter denial of
Plaintiff Potters numerous request
forms for bloodtest and labwork
the defendant Kim Otter is ignoreing
and showing deliberate indifference
to Plaintiff Potters serious Chronic
Healthcare Conditions that require
check ups and follow ups every
six months violating Plaintiff Potters
rights under the Due Process Clause
of the Fifth and Fourteenth Amendments
to the United States Constitution.


220.   To deny Plaintiff Potter bloodtest, labwork,
medicine, Chronic Healthcare treatment
and to not cover the cost of the
medicine and medical attention,
the defendants Jeff Weber, Kim Otter
Dwight Diehl, County of Cass, and
Advanced Correctional Health are
treating Plaintiff Potter differently
than a similarly situated inmate
by the name of Edward
who he also had Chronic Health Care
Condition and he was not denied
treatment and not charged money

rights under the Equal Protection Clause
of the Fourteenth Amendment to the
United States Constitution.

221. By threatening Plaintiff Potter not to
use the grievance system because
defendant Stacy Gunn said her
Sergeant said it will be all bad
for Plaintiff Potter if he keeps persueing
the issue with legal calls, and by
preventing Mr. Potter from exercise his
rights to all "protected conduct", and
for placeing Mr. Potter in disciplinary
segregation as a form of punishment
for having stamps, envelopes,
legal material, and hygene material
that is essential for bathing and
doing legal work all "protected
conduct", on March 7, 2016 and
November 2016 the defendants
Stacy Gunn, Jason Heffernan, S. Burgess
and T. Monhollen are retaliating
against Plaintiff Potter unlawfully in
violation of Plaintiff Potters rights under
the First, Fifth, and Fourteenth Amendments
to the United States Constitution. These
illegal actions are causing injury to Plaintiff
Potter's right of access to the courts.

222. By the defendants Jeff Weber, Kim Otter Dwight Diehl, K. Nevilles, S. Burgess, Stacy Gunn, Jason Heffernan, and T. Monhollen show of deliberate indifference and negligence by not providing process to grievances, use of threats that they will punish Plaintiff Potter for using the grievance system, by not providing hand written copys of grievance responses, by sometimes answering grievances over the loud speaker, not in private, infront of other inmates, and for having the grievance complaints get answered by the same exact officer that the grievance complaints are on, the defendants are creating a Conflict of Interest, bias, and prejudice grievance procedure violating Plaintiff Potters First Amendment to the United States Constitution, as well as Plaintiff Potters Due Process and Equal Protection ~~Clause~~ of the Fifth and Fourteenth Amendments to the

223. By not providing process to grievances that plaintiff Potter submitted to Jeff Weber, K. Nevilles, and S. Burgess the defendants are obstructing a grievance procedure causing unnecessary delay in violation of Plaintiff Potters rights under the First Amendment to the United States Constitution as well as the Mandela Rules on "Information to and Complaints by prisoners." These actions are causing delay and injury to Plaintiff Potters right of access to the courts under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

224. Defendant Stephen Valentich used excessive force by repeatedly having his K9 dog Champ bite Plaintiff Potter numerous times while Plaintiff was on the ground, compliant, and surrenderd. These illegal actions constituted unreasonable and excessive use of force in violation of Plaintiff Potters rights under the Fourth Amendment to the United States Constitution causing severe physical injury, pain, suffering, and emotional distress.

225. By allowing K9 Champ as an officer
to work in the Cass County Jurisdiction
when they are aware K9 Champ
has had medical surgery of
new titanium teeth and upper
jaw that are a set of deadly
weapons that cause more severe
physical injury, pain, suffering,
and scar tissue than a normal
set of K9 teeth, the defendants
Jeff Weber, Dwight Diehl, Dave Rodgers
Stephen Valentich, and County of
Cass used deadly and unreasonable
excessive use of force against
Plaintiff Potter causing severe injury
physical pain, injury, mental and
emotional distress as well as
cruel and unusual punishment,
in violation of Plaintiff Potters
rights under the Fourth, Fifth,
Eighth, and Fourteenth Amendments
to the United States Constitution.

226. By not processing handwritten grievances
and verbal complaints related to the
illegal misconduct by Deputy Stephen
Valentich use of excessive force
and failing to investigate, and
correct that illegal misconduct

the defendants Jeff Weber, Dwight Diehl
County of Cass, Justin Claibourn, H.D. Rodgers,
Jennifer Wise, K. Nevilles, Jason Heffernan
and S. Burgess are encouraging the
continuation of Deputy Stephen Valentich
illegal misconduct violating Plaintiff
Potters First, Fourth, Fifth, and
Fourteenth Amendments to the
United States Constitution. This is
also causing injury to Plaintiff Potters
due process and equal protection of
the laws.

227. Defendants Jeff Weber, Dwight Diehl
County of Cass, Kim Otter, S. Burgess,
Advanced Correctional Health,
Stephen Valentich, and K. Nevilles
violated RSMO 221.120 that is in
accordance with RSMO 221.070 by
not covering the cost of medical
attention at the Cass Regional Medical
Center while Plaintiff Potter was
in police custody of the Cass County
Sheriffs Office, this caused injury
to Plaintiff Potters credit score
that effects Mr. Potter day to day
living and to get financial credit

Plaintiff Potters due process under the Fifth and Fourteenth Amendments to the United States Constitution.

228. By subjecting Plaintiff Potter to extra restrictive inhumane conditions of confinement for the 816 days Mr. Potter set incarcerated as a pretrial detainee, without opportunities for adequate exercise, deprived of outdoor exercise, no adequate space for exercise, No access at all to an indoor gym, No sunlight, painted over windows that block sunlight, No TV, No Newspapers or source of news, poor air quality and filter system with much dust, No fresh air and sunlight, illumination or other sensory deprivation, and locked down in a cell 17-23 hours a day, with the fact Sgt. S. Burgess told Deputy Skeens to not be nice to inmates because pretrial detainees are suppose to be punished, this all added up to create an overall effect that is unconstitutional and jail conditions amounted to punishment the defendants Jeff Weber, S. Burgess

Dwight Diehl, K. Nevilles, Jason Heffernan, Stacy Gunn, County of Cass, and T. monhollen are violating Plaintiff Potters right to be free from cruel and unusual punishment as well as the right not to be punished until proven guilty in violation of Plaintiff Potters Due Process Clause under the Fifth and Fourteenth Amendments to the United States Constitution. These inhumane conditions of confinement have caused injury to Plaintiff Potters physical and mental health and making it worse. These very long periods of time in a state of punishment and harrasment under unhealthy stressfull conditions caused Mr. Potters plea of guilt for case number 15CA-CR00638-01 to be induced by fraud, apprehension duress, physical coercion, and mental coercion in violation of Plaintiff Potters right against excessive bail and deprivation of life, and liberty without due process of law under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

229. Defendants Jennifer Wise and Deputy Hendricks violated Plaintiff Potters right to due process under the Fourteenth Amendment to the United States Constitution by depriving him of his vested liberty interest to have personal privacy to his legal copys and to have the right to Unrestricted and confidential access to the courts per policy Exhibit A page 18 Article 6 section 2(3) when they read Plaintiff Potters legal mail while they were making legal copys on February 2017 of Plaintiff Potter Civil Rights Complaint. These actions caused injury to Plaintiff Potters right to act pro se and right of access to the courts because the defendants Jennifer Wise, Deputy Hendricks, and all jail officials stoped Mr. Potter from making any more legal copys preventing Plaintiff Potter from timely fileing his Civil Rights Complaint Under 42 usc 1983 in violation of Mr. Potters rights under the First, Fifth, Sixth, and

Constitution

230. By witnessing and being informed of the defendants S. Burgess, Jason Heffernan, Stacy Gunn, T. Monhollen, and Kim Otters illegal actions, failing to correct that misconduct and encouraging the continuation of the misconduct the defendants Jeff Weber and K. Nevilles are violating Plaintiff Potters rights under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, causing Plaintiff Potter to unlawfully be retaliated against creating emotional distress.

231. Plaintiff Potter has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which plaintiff seeks.

# PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgement:

232. Granting Plaintiff Potter a declaration that the acts and omissions described herein violate his rights under the Constitution and laws of the United States, and

233. A preliminary and permanent injunction, and

Granting Plaintiff Potter compensatory damages in the amount of $33,000 against each defendant equaling a total of $495,000

244. Granting Plaintiff Potter punitive damages in the amount of $33,000 against each defendant equaling a total of $495,000

245. Plaintiff Potter seeks a jury trial on all issues triable by a jury

246. Plaintiff Potter also seeks recovery of his cost in this suit, and

247. Any additional relief this court deems just, proper, and equitable

Dated: January 7, 2019

Respectfully Submitted,
Jason Potter #1053284
W.R.D.C.C.
3401 Faraon Street
St. Joseph, Mo. 64506

# VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at St. Joseph, Missouri on January, 7, 2019.

Jason M. Potter   *Jason Potter*
Jason M. Potter

Sworn to and subscribed before me this 25th day of January 2019

*Irene Elaine Ueligger*
Notary

IRENE ELAINE UELIGGER
Notary Public, Notary Seal
State of Missouri
Buchanan County
Commission # 17907675
My Commission Expires 01-31-2021

9114 9014 9645 1859 0841 29

**USPS TRACKING #**

UNITED STATES
POSTAL SERVICE.

Label 400 Jan. 2013
7690-16-000-7948

# PRIORITY
# MAIL ★

**PRESS FIRMLY TO SEAL**

**PRIORITY MAIL**
**POSTAGE REQUIRED**

PRESS FIRMLY TO SEAL

DATE OF DELIVERY SPECIFIED*

USPS TRACKING™ INCLUDED*

INSURANCE INCLUDED*

PICKUP AVAILABLE

* Domestic only

USED INTERNATIONALLY,
CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

FROM: Jason Potter #1053284-Hu#6
Western Reception Diagnostic
and Correctional Center
3401 Faraon Street
St. Joseph, MO. 64506

TO:
UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
1510 Whittaker Courthouse
400 E. Ninth Street
Kansas City, MO. 64106

SIGNED BY U.S. MARSHALS

kaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a
violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.